Nov. Term,
1832.

NAYLOR
v.
MOODY.

*Per Curiam.*—The judgment is reversed, and the verdict set aside, with costs. Cause remanded, &c.

*E. Huntington* and *C. Dewey*, for the plaintiffs.
*S. Judah*, for the defendant.

---

### NAYLOR v. MOODY and Another, Executors.

*Scire facias* by the executors of *A.* against *B.* and *C.*, to have execution against them on a replevin-bond executed by *B.* with *C.* his surety, and payable to the testator. Plea by *C.*, that the testator in his life-time took out a *fieri facias* against the defendants on the bond, and placed it in the hands of the sheriff, but withdrew it, without *C.'s* consent, before it was levied; that whilst the execution was in the sheriff's hands, *B.* had sufficient property out of which the money could have been made, and that he afterwards became and still continued to be insolvent. *Held*, on demurrer, that the plea was insufficient.

*Held*, also, that the mere delay of a creditor in not proceeding at law against the principal debtor, is no defence to a suit against the surety.

Letters testamentary or of administration granted in another state were not recognized here, by the statute of 1824, until recorded in a Circuit Court of this state; but they are now so recognized, under the statute of 1831, upon their being filed with the clerk of the Court in which they are to be introduced.

*Tuesday,*
*November 27.*

APPEAL from the *Clark* Circuit Court.

BLACKFORD, J.—A writ of *scire facias* was issued in favour of *Richard Moody*, executor, and *Polly Moody*, executrix, of the estate of *John Moody*, deceased, against *Isaac Naylor* and *William H. Moore*. This writ states that, in 1822, *John Moody*, the plaintiffs' testator, recovered a judgment against *Moore*, for a certain sum of money, in the *Clark* Circuit Court; and that, in 1823, the judgment was replevied by *Moore* with *Naylor* as his surety. It also states the subsequent death of *John Moody*, the judgment-creditor, and the appointment of the plaintiffs as his executors. The object of the *scire facias*, is to obtain an award

of execution against *Moore* and *Naylor* on the replevin-bond. The writ was returned with an acknowledgment by *Naylor* of service on him, and that *Moore* was a non-resident.

*Naylor* appeared to this *scire facias*, and pleaded three pleas in bar:—First, that the plaintiffs' testator, in 1823, had taken out an execution of *fieri facias* against *Moore* and *Naylor* on the replevin-bond, and placed the same in the hands of the sheriff; that the testator afterwards, without *Naylor's* consent, directed the sheriff not to serve the execution, and it was accordingly returned *not executed;* that whilst the execution was in the sheriff's hands, *Moore* had sufficient property out of which the money could have been made, and that he afterwards became and still continued to be insolvent. To this plea there was a general demurrer, and judgment for the plaintiffs. The second plea is,—that the plaintiffs' testator failed to take out execution, from the expiration of the time given by the replevin-bond until the 4th of *November*, 1824; and that, during all that time, *Moore* had sufficient property out of which the money could have been made. There was also a demurrer to this plea, and judgment thereon for the plaintiffs. The third plea is,—that the plaintiffs are not executors. On this plea the plaintiffs joined issue. On the trial of the cause, the plaintiffs, to prove themselves executors, offered in evidence letters testamentary granted to them by a Court in *Kentucky*, together with an endorsement of a certificate by the clerk of the Circuit Court of *Clark* county, *Indiana*, that the letters had been recorded in the Probate Court of that county on the 9th of *July*, 1830. This evidence was objected to; but the objection was overruled, and the evidence admitted. The Circuit Court, to which the cause was submitted on this evidence, awarded execution on the replevin-bond, according to the prayer of the *scire facias*. From that judgment there is an appeal to this Court.

The first question, presented by this case, is as to the validity of the first plea.

The foundation of the defence is,—that the withdrawal of the joint execution against *Naylor* and *Moore* was an injury to *Naylor*, of which he has a right to complain. The plea does not aver, that this joint execution was so framed or endorsed, as to require the sheriff, by virtue of the statute, to levy it first on the property of the principal debtor. It must be considered, therefore, as a common execution against two judgment-debtors,

NAYLOR
v.
MOODY.

and subject to be levied upon the property of the one or the other, as the sheriff might prefer or the creditor direct. But had the *fieri facias* been against *Moore* alone, and founded on a separate judgment against him, there are several strong cases to show, that the withdrawal of such an execution by the creditor *before it was levied*, would be no discharge to *Naylor*, the surety.

In the case of *Halford* v. *Byron*, the principal assigned a judgment against a third person as a security for the debt. The creditor afterwards permitted the judgment-debtor to pay a part of the money to the original judgment-creditor. The surety complained of this, and required to be exonerated to the amount of that payment. The Chancellor, however, said, that the assignment was but of a judgment as a further security for the money due on the bond, and as the obligee had got it, so he might release or discharge it as he thought fit, *and the surety is not hurt by it.* But he said it would be otherwise, if the money had been once paid to the obligee, and then lent again to the principal debtor. Prec. in Ch. 178.—2 Eq. Cas. Abr. 188. It is laid down in *Pothier*, that the pursuits of the creditor against the principal debtor do not liberate the surety, who remains always obliged until payment. Therefore, the creditor may abandon his pursuits against the principal debtor, to sue the surety. But in general, he may oppose to him the exception of discussion. 1 Pothier, 232. The creditor, having commenced a suit against the principal debtor, may afterwards discontinue it, without affecting the sureties' liabilty. *Fulton* v. *Matthews et al.*, 15 Johns. R. 433. The payee of a promissory note made by a principal and surety, sued the principal on the note, and, under the statute of *Massachusetts*, attached sufficient property to satisfy the debt. The suit was afterwards discontinued, and the property attached given up, against the remonstrance of the surety. This proceeding was held to be no defence to the surety in a subsequent suit against him on the note. *Bellows* v. *Lovell*, 5 Pick. 307.

The holder of a promissory note recovered separate judgments against the maker and endorser of the note, and afterwards took out a *fieri facias*, by the endorser's request, on the judgment against the maker, who had sufficient property to pay the debt. This execution, after being placed in the hands of the marshal, was recalled, before a levy, by the holder of the

note; and the maker became insolvent. Under these circumstances, the endorser applied for an injunction of the judgment against him on the note; but the injunction was refused. The following is the language of the Court:—Although the original undertaking of an endorser of a promissory note be contingent, and he cannot be charged without timely notice of non-payment by the maker, yet when the holder has taken this precaution, and has proceeded to judgment against both of them, he is at liberty to issue an execution or not as he pleases, on the judgment against the maker, without affording any cause of complaint to the endorser; or if he issues an execution, he is at liberty to make choice of the one which he thinks will be most beneficial to himself, without any consultation whatever with the endorser on the subject; nor ought he to be restrained, by any fear of exonerating the endorser, *from countermanding the service of any execution which he may have issued,* and proceeding immediately, if he chooses, on the judgment against the endorser. And the reason is obvious, for, by the judgment, they have both become principal debtors, and if the endorser suffers any injury by the negligence of the judgment-creditor, it is clearly his own fault, it being his duty to pay the money, in which case he may take under his own direction the judgment obtained against the maker. *Lenox* v. *Prout,* 3 Wheat. Rep. 520. This last case cited, if it be received as law, settles the present case against *Naylor,* the plaintiff in error. It shows that *Moody's* delivering to the sheriff a *fieri facias,* were it even against *Moore* alone, and countermanding it before levy, is no discharge to *Naylor,* the surety.

The doctrine both at common law and in chancery, in the case of ordinary bonds for the payment of money, is, that where sureties join in a joint and several bond, they make themselves principal debtors to the obligee. The debt is presumed to be created upon the credit given to the sureties, as well as upon that given to the principal debtor. As between the obligors and obligee, all the obligors are principal debtors, though, as between each other, they may have the rights and remedies resulting from the relation of principal and surety. As long as the creditor does no act varying the terms of the original contract, he has the same claim upon the sureties that he has upon the principal, both at law and in equity, for the payment of the

bond. · *Berg* v. *Radcliff*, 6 Johns. Ch. R. 302.—*The East India Company* v. *Boddam*, 9 Ves. 464.

The principal cases in which sureties have been relieved, are where the creditor, by giving further time to the principal for payment, has changed the original contract to the injury of the surety. The giving of further time to the principal changes the contract of the surety to his injury in this way:—the surety has a right, as soon as the debt is due by the original agreement, to pay the debt and sue the principal for the amount, or to compel the creditor, by a bill in chancery or by a notice under the statute, to sue the principal. But if, by a valid contract, further time for payment be given, the surety's hands are tied up. The principal is secure from arrest until the additional period for payment is expired; and, in the mean time, he may become insolvent. Courts of law therefore, following Courts of equity, have said—that the creditor by thus changing the original contract to the surety's injury, and without his consent, discharges the surety altogether. *Nisbet* v. *Smith*, 2 Bro. Ch. Rep. 579.—*Samuell* v. *Howarth*, 3 Merivale, 272.

The case before us does not, certainly, come within this principle. *Naylor's* original situation is not changed. He had the same right after the execution was countermanded that he previously had, to enable himself to take out an execution against *Moore*, or to compel *Moody* to do so. His hands were not tied up until a further time for payment had expired. As *Moody* was left entirely free to proceed against the principal or not, it would seem that he might sue out an execution on the bond or not, as he pleased, or that, after suing out an execution, he might withdraw it before it was executed, and take out another of the same or of a different sort, or none at all, at his discretion, without affecting the surety's liability. *Naylor* had bound himself in a replevin-bond, having the effect of a judgment, for the payment of a judgment previously recovered against *Moore*, and it was consequently the business of *Naylor*, and not that of *Moody*, to see that *Moore* paid the debt. *Wright* v. *Simpson*, 6 Ves. 734. If *Naylor* chose to be passive, and to neglect to have an execution levied on *Moore's* property until there was none to levy on, the fault is his own, and he must bear the loss.

It is contended that the *fieri facias* was a lien on *Moore's* goods,

and that the relinquishment of that lien was an injury to *Naylor*. It is not easy to discover the principle, upon which the relinquishment of this lien can be complained of by *Naylor*. The lien created by the delivery of the *fieri facias* to the sheriff, did not change the property of *Moore's* goods; nor was it a satisfaction of the whole or of any part of the debt. The goods of *Moore* might have been subsequently destroyed, or removed to places unknown, by himself or a stranger, and the benefit of the lien thus entirely lost. The sheriff, in such case, could not sue the wrongdoer; nor would the creditor have any remedy against the sheriff, or any body else, for the loss of the goods. *Hotchkiss* v. *M'Vickar*, 12 Johns. Rep. 403. The relinquishment of so imperfect a lien is not like the giving up of funds, actually placed by the principal in the creditor's hands to be appropriated to the payment of the debt, nor like goods placed in the custody of the law for that purpose *by the actual levy of a fieri facias*. In these cases of actual possession of the principal's goods, the creditor is viewed as a trustee for the surety, and the relinquishment of the possession is a breach of trust. But we know of no case, and presume there is none, which extends this doctrine of trust in the creditor for the surety's benefit, beyond where the goods are actually in the hands of the creditor, or in the custody of the law.

The leading case, relative to the surety's discharge by the creditor's giving up the means in his hands of reimbursing himself, is that of *Law* v. *The East India Company*, 4 Ves. 824. In that case, the company, having money and effects of the principal debtor actually in their hands, more than sufficient to pay themselves, delivered the same over to his administrators; and the language of the Court is, that where the principal has left a sufficient fund in the hands of the obligee, and he thinks fit, instead of retaining it in his hands, to pay it back to the principal, the surety cannot be called upon. Mr. Fell, in his treatise on guarantees, after citing this case in 4 Ves., to show the general doctrine on the subject, says that, to effect the discharge, there must be a parting with something actually in the power and possession of the party, and not the consenting to waive the receipt of a payment or security, never in his actual possession; and, in support of this position, he cites the case of *Halford* v. *Byrom*, to which we have already referred.

In accordance with the principle in the case of *Halford* v.

13

Nov. Term,
1832.

NAYLOR
v.
MOODY.

*Byrom*, it may be said as to the one before us, that it is not where there is an imperfect lien resulting from the mere circumstance of a *fieri facias* being in the sheriff's hands, but that it is only where the goods are *in the custody of the law by their actual seizure on the execution*, that the surety can complain that the execution has been withdrawn. In the cases of *Jones* v. *Bullock*, 3 Bibb, 467, *Baird* v. *Rice*, 1 Call, 18, and *Dixon* v. *Ewing*, 3 Ohio Rep. 280, as well as in the others to which we have been referred, there had been *an actual levy of the execution;* and it was on that ground that the sureties were discharged. But in the case of *Lenox* v. *Prout*, which we have already cited, there had been no levy, and the surety could obtain no relief. The case of *Lenox* v. *Prout*, is referred to with approbation by Chancellor *Kent*, in a case where the bail to an arrest, after judgment against them, complained of the creditor's subsequent want of diligence against the principal debtor. The Chancellor says—"I am not aware of any case, which has ever imposed upon the creditor the necessity of peculiar diligence against the principal, on the ground of the still subsisting relation of principal and surety, *after judgment and execution* against the bail or the surety. It becomes then too late to inquire into the antecedent relations between the parties. Those relations became merged in the judgment. This was expressly declared to be the case as between the holder and maker, and endorser of a promissory note, by the Supreme Court of the *United States*, in *Lenox* v. *Prout*, 3 Wheat. 520; and I cannot perceive that the plaintiffs (the bail) have any greater privileges after judgment against them, in consequence of their original character as bail, than the party had in the case cited, who was originally an endorser without consideration." *Bay* v. *Tallmadge*, 5 Johns. Ch. Rep. 305, 315.

The most of the observations we have thus far made, and of the authorities cited, relate to the case of a separate judgment and a separate execution against the principal debtor. That case is more favourable to the surety than the one before us. There were here no judgment and execution against the principal alone; but the bond having the effect of a judgment, and the execution, were against the principal and surety jointly. The surety's defence is, that the failure to have the execution against himself and the principal executed, was an injury to the surety, and he is therefore discharged. This defence seems

liable to a short and conclusive answer,—viz. that it is not shown that the withdrawal of the execution injured the surety. The *fieri facias* in question was a joint one against *Moore* and *Naylor*, and might have been legally executed by direction of the creditor, or by the will of the sheriff, upon the property of *Naylor* alone, and would have been so executed, for any thing that appears, had it not been withdrawn. It is impossible then to say, that the bare fact of the non-execution of this joint *fieri facias* against *Moore* and *Naylor*, was necessarily an injury to *Naylor*. This obvious objection to the defence,—viz. that it does not appear but that the execution would have been executed, had it not been withdrawn, upon *Naylor's* own goods,— was attempted, but without success, to be overcome in a late case in *Virginia*, by showing that the sheriff had gone to the house of the principal debtor, and was just about to levy on *his* goods, when the execution was countermanded. The case was as follows:—

*M'Kenny's* executors having obtained a judgment and an award of execution, on three several forthcoming bonds, against *Joseph Waller*, the principal, and *Curtis Waller* the surety, therein bound, sued out thereupon three writs of *fieri facias*, dated in *April*, 1822, and returnable to the *June* term following. These executions were put into the hands of the sheriff. *Joseph Waller* the principal, had, at the time, personal property in his possession, amply sufficient to satisfy the whole debt; and the sheriff went to his house, three days before the return day, for the purpose of levying the executions on *his* property then and there, with the avowed design to take it into his own keeping, when *Joseph Waller* prevailed on the creditors to give him a short indulgence, and they, at his instance, without the consent or knowledge of *Curtis Waller*, the surety, gave written instructions to the sheriff not to levy the execution till they should see him. These were the terms of the instructions; the creditors not binding themselves to suspend proceedings for any time, but giving a mere indulgence to be determined at their own pleasure. In consequence of the instructions thus given him, the sheriff forebore to levy the executions, and made return on them—"not executed by order of the plaintiffs.". Very shortly afterwards, *June* 7, 1822, *M'Kenny's* executors sued out new writs of *fieri facias;* but, after these new executions were put into the sheriff's hands, *Joseph Waller* removed the greater part

of his effects out of the county and beyond the reach of the process; so that the sheriff could not find enough of *his* property to satisfy the amount of the three executions. What he could find of it he took; and then for the residue of the debt, he levied the process on the property of *Curtis Waller*, the surety. Upon these facts, *Curtis Waller*, the surety, applied to a Court of chancery to enjoin *M'Kenny's* executors from proceeding any further on their executions against *him*. The Court of appeals decreed that there was no ground whatever for the relief prayed for by the surety, and that the bill should be dismissed. *M'Kenny's Executors* v. *Waller*, 1 Leigh's Rep. 434.

Upon the authority of this case, and upon the others we have referred to, as well as upon the general principles which we conceive to prevail in regard to principal and surety, we have come to the opinion, that the plea of *Naylor* in this case, which we have been considering, cannot be supported. We think that the bare delivery to the sheriff by *Moody*, the creditor, of the *fieri facias* against *Moore* the principal, and *Naylor* the surety, and *Moody's* countermanding the execution before a levy, are not of themselves a discharge to *Naylor* the surety, though *Moore* had sufficient property at the time to pay the debt, and afterwards became insolvent. The opinion of the Circuit Court, therefore, sustaining the demurrer to the first plea of *Naylor*, is correct (1).

With respect to the second plea, there can be no doubt. The mere delay of the creditor, in not proceeding at law against the principal debtor, is no defence to the surety. *King* v. *Baldwin*, 2 Johns. Ch. Rep. 554.—*Eyre* v. *Everett*, 2 Russ. 381. The demurrer to this plea was correctly sustained.

There is one error, however, in the proceedings of the Circuit Court. It is the improper admission in evidence of the letters testamentary of the plaintiffs below. They were granted in another state, and were of no authority here until recorded, agreeably to the provisions of the statute, in a Circuit Court of this state. Rev. Code, 1824, p. 324, 325. The law on the subject is otherwise now; and the foreign letters testamentary or of administration, need only be produced and filed with the clerk of the Court, in which the suit is to be maintained. Rev. Code, 1831, p. 170, 171. But the case before us is governed by the act of 1824; and as the letters testamentary, produced by the plaintiffs, had not been recorded in a Circuit Court

conformably to that act, they were not admissible to prove the plaintiffs' right to sue as executors. *Naylor* v. *Moody*, in this Court, *May* term, 1829.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

C. *Dewey*, for the appellant.

J. H. *Farnham*, for the appellees.

(1) "If the creditor parts with securities, or any fund, which he would be entitled to apply in discharge of his debt, the surety becomes exonerated, at least, to the extent of the value of such securities; because securities, which the creditor is entitled to apply in discharge of his debt, he is bound either so to apply, or to hold them as a trustee, ready to be applied, should the surety desire it.

Of this principle the case of *Mayhew* v. *Crickett*, 2 Swanst. 185, affords an exemplification. There a debt was secured by two promissory notes, each for half the amount, of two sureties, and also by a warrant of attorney of the principal debtor, upon which the creditor had entered up judgment, *and taken the goods of the debtor in execution*, but he afterwards withdrew the execution.

Per the Lord Chancellor, *interloq.*—'The second ground (in support of the bill by the sureties) was, that the defendants, by releasing the execution, had relinquished their remedy, at least *pro tanto*. I always understood, that if a creditor takes out execution against the principal debtor, and waives it, he discharges the surety, on an obvious principle, which prevails both in Courts of law and in Courts of equity. * * * * * The principle is, that he is a trustee of the execution for all parties interested.' "—Theob. on Prin. and Sur. 143.