Gilmore, C. J.
The objection, that the original petition does not state facts sufficient to constitute a cause of action raises the question : Can a wife maintain an action, in her own name, for the loss of the society and companionship of her husband, against one who wrongfully induces her husband to abandon or send her away ?
In answering this question, in view of the legislation of our own state on the subject of the rights of married women, it becomes necessary, not only to look to the doctrine of the common law on the subject, but also to examine the reasons upon which its doctrines rest.
In the early period of English jurisprudence, the personal and marital rights of wives were, in some respects, exclusively cognizable in the spiritual courts, and, in other respects, as far as they wrere recognized at all, in the courts of common law.'
*626 The common law considers marriage in no other light than a civil contract, some of the incidents of which will be mentioned- hereafter. But the holiness of the matrimonial state is left entirely to the ecclesiastical law; the temporal courts not having to consider unlawful marriage as sinful, but merely as a civil inconvenience. The punishment, therefore, or annulling of incestuous or other unscriptural marriages, is the province of the spiritual courts which act fro salute ánimos. I Black. 432.
The spiritual courts also had cognizance of matrimonial causes or injuries respecting the rights of marriage. Sir W. Blackstone enumerates five of such causes, the third of which is: “ The suit for restitution of conjugal rights, which is brought whenever either the husband or wife is guilty of the injury of subtraction, or lives separate from the other without any sufficient reason, in which case the ecclesiastical jurisdiction will compel them to come together again.” 3 Black. 94. “ In the civil law the husband and wife are considered as two distinct persons, and may have separate estates, contracts, debts, and injuries, and therefore, in our ecclesiastical courts, a woman may sue and be sued without her husband.” 1 Black. 444.
It is unnecessary to inquire into the extent to which a wife could obtain redress for injuries to her personal or martial rights in the spiritual courts. The above quotations are made for the purpose of showing that while it may be doubtful, in view of a recent discussion of the subject, that will be noticed below, whether the common law regards the right of the wife to the consortium of her husband, as of such a nature that pecuniary damages can be given her for being wrongfully deprived of it; yet in a jurisdiction that was exercised concurrently with that of the common law, the x-ights of the wife in these respects were x’ecogixized and x-edressed when injured. The fact, that instead of giving her damages for the loss of .the consortium of her husband, the spii’itual eoui’ts restored to her the thing itself, makes no difference in 'the principle involved. -It -is a distinct recognition of the rights of the *627 wife in this respect, by the ecclesiastical law of England, which was founded on the principles of the civil law. But at common law the husband and wife are one person, that is, the very existence of the woman, together with all her personal rights, are suspended during the marriage, or at least are incorporated and consolidated into that of the husband ; and upon this principle, of a union in person in husband and wife, depend almost all the legal rights, duties, and disabilities, that either of them acquire by the marriage. By the marriage, the husband acquires an absolute title to all the personal property of the wife, and a right to reduce her choses in action to possession, and thereby make them his own; also he becomes entitled to her labor and sendees or the proceeds of it, for which latter he may sue in his own name. An injury to the wife is in legal contemplation an injury to the husband only. Eor a slight battery of the wife, the husband may recover damages, but for this he must join his wife in the action. If, however, she is beaten so enormously, that the husband is thereby deprived for any time of her company and assistance, the law then gives him an action in his owii name for this beating, per quod consortium amisit, in which he shall recover a satisfaction in damages. 1 Black. 442; 3 lb. 139, 140.
By comparison the difference between the civil law as administered in the spiritual courts, and the common law as administered in the temporal courts, in respect to the personal and marital rights of the husband and wife, is. plainly apparent. In the former they are regarded as distinct persons, and the wife could have her injuries, of which those courts had jurisdiction, redressed in her own name; while in the latter, they are regarded as one person — the husband, whose name must always be used either jointly with the wife, or alone for the redress of injuries to the person or personal rights of the wife.
If, in this state, the common law dominion of the husband over the property and personal rights of the wife has been taken away from him and conferred upon her, and remedies in accordance with the spirit of the civil law have *628 been, expressly given to the wife for the redress of injuries to her person, property, and personal rights, all of which I hope to show has been done, then it must follow that she may maintain an action in her own name for the loss of the consortium of her husband against one who wrongfully deprives her of it, unless the consortium of her husband is not one of her personal rights. It has been already shown that this was one of her ecclesiastical law rights; and I have said that it is doubtful whether it is one of her common-law rights. But before coming to the case in which tb e latter question is discussed, I will recur briefly to the ecclesiastical law. The spiritual courts also had jurisdiction of defamations. In Palmer v. Thorpe, 4 Coke, 19, it is said: “ Touching defamations determinable in the ecclesiastical court, it was resolved that such defamations ought to have three incidents,” the first of which is, “that it concerns matters merely spiritual and determinable in the ecclesiastical court, as for calling him 11 heretic, schismatic, adulterer, fornicator, etc.’ ”
And it was in consequence of such defamations being regarded as matters merely spiritual, of which the spiritual courts had jurisdiction, that the temporal courts held such words as those above quoted not actionable per se; for, if they were actionable in both the spiritual and temporal courts, then a party could be twice punished for the same words. Byron v. Emes, 12 Mod. 106; 2 Salkeld, 694. And here we have the reason why words imputing a want of chastity to a modest matron or a pure virgin, however publicly spoken, were not actionable at common law, without an allegation of special damage.
And here the test question under this rule of the common law may be asked : In an action of slander, brought by a wife, the husband being joined for conformity, will the loss of the consortium of her husband, in consequence of the speaking of slanderous words concerning her, constitute special damage, for which the action will lie ?
This question was very fully discussed and considered in Lynch v. Knight and wife, 9 H. of L. 577. This was an *629 action brought by a wife, her husband being joined as plaintiff for conformity, against L., for a slander uttered by him to her husband, imputing to her that she had been “ all but seduced by M. before her marriage, and that her husband ought not to suffer M. to visit at his house;” and the special damage alleged was that, in consequence of the slander, the husband had compelled her to leave his house and return to her father, whereby she lost the consortium of her husband. It was held that the cause of the complaint thus set forth would not sustain the action, inasmuch as the special damage relied upon did not arise from the natural and probable effect of the words spoken by the defendant, but from the precipitation or idiosyncrasy of the husband in dismissing his wife from his house, when he was only cautioned not to let her mix in society.
But Lord Campbell was of the opinion that a wife can maintain an action against a third person for words occasioning to her the loss of the consortium, of her husband; and that had the words contained a direct charge of adultery against the wife, he should have thought the allegation of special damage sufficient to support the action. In which view Lord Cranworth was strongly inclined to concur.
Lord Campbell further said: “Although this is a case of the first impression, if it can be shown that there is presented to us a concurrence of loss and injury from the act complained of, we are bound to say that this action lies. Nor can I allow that the loss of consortium, or conjugal society, can give a cause of action to the husband alone. If the special damage alleged to arise from the speaking of slanderous words, not actionable in themselves, result in pecuniary loss, it is a loss only to the husband; and although it may be the loss of the personal earnings of the wife living separate from her husband, she can not join in the action. But the loss of conjugal society is not a pecuniary loss; though I think it may be a loss which the law may recognize to the wife as well as to the husband.”
In the same case, Lord Wensleydale stated that he had *630 considerable doubt upon the point, but that he had made up his mind that the action would not lie. He said: “It is contended that it may be supported by analogy to the action which the husband may unquestionably maintain for an injury to the wife, per quod consortium amisit. I agree with Laron Eitzgerald, that the benefit which the husband has in the consortium of the wife, is of a different character from that which the wife has in the consortium of the husband. The relation of husband and wife is in most respects entirely dissimilar from that of the master to the servant, yet, in one respect, it has a similar character. The assistance of the wife in the conduct of the household of the' husband, and in the education of the children, resembles the service of a hired domestic, tutor, or governess; is of material value, capable of being estimated in money, and the loss of it may form the proper subject of an action, the amount of compensation varying with the position of the parties. This property is wanting in none. It is to the protection of such material interests that the law chiefly attends.”
This case bears more directly upon the question under consideration than any other English case of which I am aware; for, if the loss of the consortium of the husband is sufficient to constitute special damage, for which an action of slander would lie at common law, it seems to me that there can be no doubt that, under our statute, such loss will constitute a good cause of action in favor of the wife, directly against one who wrongfully causes the loss; and while the discussion leaves the question in doubt at common law, the grounds upon which the judges differ are clearly indicated.
If the husband can maintain an action for the loss of'the consortium of the wife, then it seems to me that Lord Campbell is clearly right, when he says that he can not allow the action, for this cause, to the husband alone, and that the loss of conjugal society, though not pecuniary, is a loss which the law may recognize to the wife as well as to the husband.
To avoid the force of this proposition, the language of *631 Lord Wensleydaleis open to the inference that the husband can not maintain an action for the loss of the consortium of ,he wife alone, and that it is the loss of her services, which are of material value, and not the loss of her society, which is of no pecuniary value, that constitutes the gist of the action which the husband may maintain for an injury to the wife; but when the action is well brought for loss of services, it is further to be inferred that the jury may, as they always do, give damages, varying with the position of the parties, commensurate with the real injury, including the loss of consortium.
This unsatisfactory state of the common law in reference to the rights of the wife, is, I apprehend, partly owing to the subject being cognizable in two jurisdictions, and partly to the common-law unity of person in husband and wife, and the legal incidents that flow from this unity, both of which were noticed above.
Having shown the doubtful aspect of this question at common law, it will be my object now to show that the reasons that gave rise to those doubts, either never existed in this state, or that they have been swept away by legislation.
In the first place, the subject of marriage and marital rights has never been cognizable in two independent jurisdictions in this state; hence, in defamations, there was no danger of a person being twice punished for the same words; and, consequently, it has long been the 'settled law of this state, that words imputing a want of chastity to a woman, married or single, are, per se, actionable. Sexton v. Todd, Wright, 317 ; Watson v. Trask, 6 Ohio, 532; Reynolds v. Tucker, 6 Ohio St. 516.
In this respect, therefore, the law of this state has never been in accord with the common law.
Neither could a suit for restitution of marital rights ever have been maintained in any of the courts of this state, as it could in the ecclesiastical courts of England; and, hence, none of the embarrassments that grew out of two jurisdictions having cognizance of different branches of the same *632 subject-matter, have ever existed here. With us, as shown below, whatever rights, legal or equitable, are recognized to the wife, she may defend when. threatened, or redress when injured, by actions in her own name.
In the next place, let it be admitted that, at common law, Lord Wensleydale is correct in saying that the benefit which the husband has in the consortium of the wife, is of a different character from that which the wife has in the consortium of the husband; and that the difference consists in the fact that the wife in some respects resembles a hired domestic, to whose services the husband is entitled in his own right; let us see if this doctrine of the common law has not been overthrown by the legislation of this state.
JBy the act of 1861, S. & S. 389: “All personal property, including rights in action, belonging to any woman at her marriage, or which may have come to her during coverture by gift, bequest, or inheritance, or by purchase with her separate money or means, or be due as the wages of her separate labor, or have, grown out of a violation of any of her personal rights, shall, together with all income, increase, and profit thereof, be and remain her separate property, and under her sole control.
Section 28 of the civil code, as amended March 30, 1874, provides as follows: “ Where a married woman is a party, her husband must be joined with her, except when the action concerns her separate property, or is upon a written obligation, contract, or agreement signed by her, or is brought by her to set aside a deed or will, or if she be engaged as owner or partner in any mercantile business, and the cause of action grows out of or concerns such business, or is between her and her husband, she may sue or be sued alone, . . . But in no case shall she be required to prosecute or defend by her next friend.”
This legislation, in effect, abolishes the common law unity of person in husband and wife, so far as that 'unity is represented solely by the husband, and in its stead introduces a rule analogous to that of the civil law, by which the wife is so far regarded as a distinct person, that she may have her *633 separate property, contracts, credits, debts, and injuries growing out of a violation of any of her personal rights, all of which shall be and remain under her sole control; and in matters concerning them, or any of them, she may sue or be sued alone. Even the wages due for the wife’s separate labor, which are of material value, capable of being estimated in money, and to which the common law chiefly attends in giving the husband an action for an injury to the wife, by reason of which he lost her services, has been taken from the husband and given to the wife; not only this, but she may sue for such wages, and also for such injury, in her own name, and the husband can not, without her consent, acquire any interest in either.
Consequently, in this respect at least, under our legislation, the benefit which the wife has in the consortium of the husband is equal to that which the husband has in the consortium of the wife. If, at common law, the husband could maintain an action for the loss of the consortium of the wife, I can see no reason why, under our law, the wife can not maintain an action for the loss of the consortium of the husband. And if it be said that it was the loss of the services of the wife, that constituted the gist of the husband’s action in such cases, it is a sufficient answer to it to say, that the reasons upon which this rule of the common law rested, either never existed or have ceased to exist in this state.
In Clark v. Harlan, 1 Cin. Sup. Ct. R. 418, it is held that the wife may maintain an action for the loss of the conjugal society of the husband.
In Cooley on Torts, 227, in a note referring to Lynch v. Knight, supra, the learned author closes by saying: “We see no reason why such an action should not be supported, where by statute the wife is allowed, for her own benefit, to sue for personal wrongs suffered by her.”
Is the right of the wife to the consortium of the husband one of her personal rights ? If it is, then the statute makes the right of action growing out of an injury to the right, the separate property of the wife, for which the code gives *634 her a right to sue in her own name. Before marriage the man and woman are endowed with the same personal rights. If under no disability, each is competent to contract. When the agreement to marry is entered into, but before its consummation, each has the same interest in it, and either may sue for a breach of it by the other. In this state, neither the husband nor wife unconditionally surrenders their personal rights by consummating the contract of marriage. On the contrary, each acquires a personal as well as legal right to the conjugal society of the other, for the loss of which either may sue separately.
A majority of the court are of the opinion that there is a good cause of action stated in the petition.
2. Bid the court err in admitting the declaration of the husband, made in the absence of the defendant, to the effect that the defendant .was doing all he could to bring about a separation between the plaintiff and her husband? We think it did. This was clearly hearsay testimony, and nothing else.
In an action for enticing away the plaintiff’s wife, the declarations of - the wife are not admissible in evidence. Winsmore v. Greenbank, Willes, 571.
The confessions of the wife, in an action by the husband against her seducer, are not evidence against the defendant, Bull. N. P. 28.
So, in an action against a third party for inducing the plaintiff’s husband to send her away, the declarations of the husband, made in the absence of the defendant, are not admissible in evidence.
3. Bid the court err in refusing to charge that, to entitle the plaintiff to recover, the defendant must have maliciously caused the separation of the husband and wife ?
This charge ought to have been given. The term malice, as applied to torts, does not necessarily mean that which must proceed from a spiteful, malignant, or revengeful disposition, but a conduct injurious to another, though proceeding from an ill-regulated mind, not sufficiently cautious before it occasions an injury to another. 11 Serg. & R. 39. *635 40. If the conduct of the defendant was unjustifiable and actually caused the injury complained of by the plaintiff, which was a question for the jury, malice in law would be implied from such conduct, and the court should have so charged.
Eor error in admitting the declarations of the husband, and in refusing to charge as requested, the judgment must be reversed, and the cause remanded to the court of common pleas for a new trial.

Judgment accordingly.