## LUCAS *v.* TUCKER.

The laws of the State in which lands are situated, must control in acquiring and transferring the title thereto.

In order to the transfer of lands by a devise, the will must, in its execution, proof, &c., conform to the law of the place where the land is situated; unless a different mode is recognized by the local law.

An executor derives his power to act as such, in reference to the transfer of immovable property, from a compliance with the law of the place where he attempts to operate under the will, and not from the will alone.

Where local laws exist, in regard to executors appointed in another State, the same must be at least substantially complied with, before the executor can there be recognized as such.

The curative statutes enacted by our Legislature to heal certain defects in sales made by executors, only embrace the proceedings of such persons as have acted, or attempted to act, under the laws of this State, either by original appointment under the same, or by conforming thereto, if appointed without the State. And, hence, can have no application to a case where executors, appointed and qualified in another State, proceed to sell lands in this State, under a power contained in the will, without attempting to conform to the laws of this State on the subject of foreign wills.

APPEAL from the *Laporte* Circuit Court.

*Tuesday, November 26.*

HANNA, J.—On *January* 1, 1843, *Francis Lucas*, a resident of *Ohio*, died there testate, the owner of lands in *Indiana*. In *May*, 1843, his will was admitted to probate in the county where he died, and the executors therein named, *Stokes* and *Crane*, gave bond, &c., and letters were issued to them. On *October* 2, 1843, they caused a copy of the will

Nov. Term,
1861.

Lucas
v.
Tucker.

and probate to be recorded in the recorder's office of *Laporte* county, where the lands in dispute are situated.

After certain bequests, &c., the will contains this clause: "14th. My will is that my executors shall, and they are hereby empowered to, sell lands in the State of *Indiana* of mine, or so much as is required to pay my debts, and legacies contained in this my last will and testament; and if all my lands in said State be insufficient to pay my debts, as aforesaid, then my will is, to sell lands of mine in *Warren* county, *Ohio*, to make up the balance of money to pay debts as above."

On *June* 9, 1845, said *Stokes* and *Crane* sold, at public auction, and conveyed to *Tucker*, the lands in controversy, which have been ever since occupied by him. Other lands, it appears, to the amount of 3,500 acres, were also sold.

The will was, perhaps, executed and proved according to the laws then in force in *Ohio;* this appears to be conceded.

The statute referred to, as authorizing the placing said will, &c., upon record in the recorder's office, is the statute of frauds and perjuries, (R. S. 1838, pp. 314, 315) which provided, among other things, that a devise of lands should be in writing, signed, attested, &c., be proved, &c., and that "proved wills," &c., "devising real estate, or any interest therein, should be admitted to record in like manner as proved conveyances of real estate," &c.

Before the sale in question, the Revised Statutes of 1843 were in force, by which, (§ § 257, 258, 259, p. 533,) it was provided that lands sold under a power in a will should be under the direction of the Court, in like manner as sales for the payment of debts, and subject to appraisement, as if sold on execution. Acts 1843, p. 51.

No order of Court in reference to the sale of said lands was made, nor were they appraised.

The reason for causing the will to be recorded in the recorder's office, we suppose, was that the clause quoted was by the executors construed to be a bequest of lands, or the creation of a trust or interest therein, instead of a mere power to sell. We do not deem it necessary to decide whether this case fell within the statute authorizing such act of recording, for

even if it did, we are not able to perceive any benefit arising from that act alone; indeed, if we understand the brief of appellee, it is therein admitted that the proceedings of the executors were irregular, and the sale erroneous; but it is insisted that such irregularities and errors are cured, and the sale rendered valid, by certain statutes since enacted.

On January 28, 1847, a statute was approved to "amend the practice in the Probate Court," by which, among other things, it was enacted "that all the sales heretofore made by executors, in strict conformity with the provisions of any will, be, and the same are hereby, confirmed and made valid." Acts 1847, p. 117.

On February 16, 1848, another statute was approved, entitled "An Act to amend the ninth article of chapter 30, of the Revised Laws of 1843," in which, by § 1, it was enacted that a sale by an executor, under a power in a will, was authorized without a resort to a Court; and, § 2, "That all sales heretofore made by executors, or administrators with the will annexed, made in accordance with the power given in any will, are hereby confirmed." Acts 1848, p. 10.

Chapter 30, referred to, contains, among other matters, minute provisions as to the production and authentication of, and manner of proceeding upon, foreign wills, or those made and proved in another State. The substance of these enactments is, that if such will is proved and certified in the manner therein designated, and if upon its production to the Probate Court of a county in which there is any estate "upon which said will may operate, said Court shall be satisfied that the instrument ought to be allowed," &c., the same shall be filed and recorded by the clerk, and shall have the same force and effect as if it had been originally admitted to probate in this State; that letters shall then be issued thereon, and further proceedings had, as in cases originally arising in this State; but that the same shall not be construed as making valid any will, &c., that is not executed, attested and subscribed, in the manner prescribed by the laws of this State, (R. S. 1843, § § 47, 48, 49, 50, 51, p. 495,) and that the Courts of this State shall have the same jurisdiction, as to filling vacancies, requiring

Nov. Term, sureties, &c., as to wills in this State. § 444. And said execu-
1861. tors shall be subject to the same liabilities, actions and pro-
visions of law &c. § 443, p. 569.

LUCAS        These various acts are referred to, because upon them
v.
TUCKER.  arises a question preliminary to the main one discussed, as
to the power of the Legislature to cure such defects as those
arising in this case. That question is, whether the vendors
of this land are in a condition to avail themselves of the
advantages, if any, of these curative statutes. In other
words, could they in any sense be considered as executors,
so far as their acts in this State were concerned, unless they
had, at least substantially, complied with these statutes, by
the production of the will to the proper Court, procuring an
order of Court, causing it to be filed and recorded, and letters
to issue thereon, and an order as to security, &c. R. S.
1843, §§ 266, 267, 268, p. 534. As they entirely failed to
comply with these statutes in any respect, were not their
acts those of individuals, and not performed in a fiduciary
capacity? Did the Legislature, in these amendments of a
curative nature, have reference to persons who had been
professing and attempting to act under our laws; or did
they have in view, as well, the proceedings of those who
may have come from abroad and acted without regard to
our laws?

In *Call* v. *Ewing*, 1 Blackf. 301, it was held by this Court,
that a person appointed executor must conform to the statute
requiring him to prove the will, give bond, and take out
letters, before he could serve; and if he did not, he "could
not be considered as an executor under our act of Assembly."
Nor can he have a "right to the property, nor be liable to a
suit for the debts, unless he accepts." See, also, 1 Blackf. 372.

In *Naylor* v. *Moody*, 2 Blackf. 247, it was held that letters
testamentary granted in another State will not authorize a
suit in this State, unless they are filed and recorded in the
Circuit Court here, as required by the statute. R. S. 1824,
p. 324. See, also, *Naylor* v. *Moody*, 3 Blackf. 92; *Fenwick* v
*Sears' Adm's*, 1 Cranch, 259; *Dixon's Executors* v. *Ramsay's
Executors*, 3 *id.* 319. In the last cited case, it is held that an
executor sues by virtue of his letters testamentary, and can

only sue in Courts to which the power of those letters Nov. Term, extends. 1861.

In *Kerr* v. *Moore*, 9 Wheaton, 565, it was held that, "It is an unquestionable principle of general law, that the title to, and the disposition of, real property, must be exclusively subject to the laws of the country where it is situated." See, also, Story's Conflict of Laws, §§ 424, 428, 435. And, that as to personal property, "A person claiming under a will proved in one State, can not intermeddle with, or sue for, the effects of a testator in another State, unless the will be proved in that other State, or, unless he be permitted to do so by some law of that State." And it is further held, in the same case, that where lands situated in *Ohio*, were claimed by virtue of a will made and proved in *Kentucky*, it was essential to the establishment of the title, to prove that the will had been proved and recorded according to the laws of *Ohio*. See, also, Jarman on Wills, vol. 1, p. 1, and note.

So in Toller on Executors, in his chapter treating of the Probate of the Will, it is said, in substance, that although an executor derives, from the will, his right to act, yet, until the probate thereof, Courts will not judicially notice him as such.

In *McCormick et al.* v. *Sullivant et al.*, 10 Wheaton, 192, it was held that "Title to lands, by devise, can be acquired only under a will duly proved and recorded, according to the law of the State in which the lands lie; and that the probate of a will in the State of *Pennsylvania* gave it no validity whatever in respect to lands situated in the State of *Ohio*, and as to which the Court considered the deceased as having died intestate, and, consequently, that they descended to his heirs."

In *Taylor* v. *Benham*, 5 How., the same court uses this language: "It is obvious, likewise, on principle, that where a sale is made under a will, which is merely the evidence of authority or power to do it, the omission to record it will not vitiate the sale, unless recording is, in such case, required by a local statute. If so required, the statute must, of course, govern. Probably, the necessity for this must depend entirely on the local laws applicable to the transaction—the *lex rei sitæ*."

Nov. Term, 1861.

Lucas
v.
Tucker.

These decisions are cited, with reference to certain propositions, in support of which many other authorities might be adduced, namely:

1. That the laws of the State, in which lands are situated, must control in acquiring and transferring the title thereto.

2. That to transfer title to lands by a devise, the will must, in its execution, proof, &c., conform to the law of the place where the land is situate, unless a different mode is recognized by the local law.

3. That an executor derives his power to act as such, in reference to the transfer of immovable property, from a compliance with the law of the place where he attempts to operate under the will, and not from the will alone.

4. That where local laws exist, in regard to executors appointed, &c., in another State, the same must be, at least substantially, complied with, before the executor can there be recognized as such.

We think this fourth proposition is clearly inferable from the decisions quoted; and, indeed, in our own Court, it was long since so shadowed forth as to leave scarcely room for doubt on the subject.

Looking at these principles, in connection with another, to wit, that legislative action is supposed to be had with reference to settled principles of law, and especially where those questions have been adjudicated in the same jurisdiction, we can arrive at but one conclusion, and that is, that the curative statutes in question, were intended to, and do, embrace only the proceedings of such persons as have acted, or attempted to act, as executors, under the laws of this State, either by original appointment under the same, or by conforming thereto, if appointed without the State.

It follows, that the record before us does not show a case where these curative statutes could operate, and therefore the validity of the same need not be discussed; and that the rulings of the Court, on demurrers, were erroneous.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded, &c.

*John B. Niles* and *Henry T. Niles*, for the appellant.

*James Bradley* and *D. J. Woodward*, for the appellee