EMMONS, *Administrator, Appellant,* v. GORDON *et al.*

In Banc, July 6, 1897.

1. **Wills:** TITLE INVESTED IN EXECUTOR. Real· estate upon the death of a testator passes to his heirs subject to the power of disposal conferred upon the executor by the will, and where the will directs that the lands shall be sold by the executor he is given nothing but the naked power to sell, and has no interest in the land.

2. ———: EXECUTOR'S SALE OF LAND IN OTHER STATES. The executor, under a will conferring upon him the power to sell real estate, has no power to sell testator's land lying in another State unless it is shown that the will has been duly probated in such State, or that the laws of such State dispensing with the necessity of probating the will there anew confer upon the executor the power to sell. (Following *Cabanne v. Skinker,* 56 Mo. 367.)

3. ———: LIABILITY OF EXECUTOR'S BONDSMEN. The bondsmen of an executor, who by the will is given power to sell testate's real estate, are not liable for a failure by him to account for money received by him as executor from the sales of land lying in Texas, where it is not shown that the will was probated in Texas nor that the sale was made in accordance with the laws of that State.

4. ———: EXTRA-TERRITORIAL FORCE. So far as concerns realty, a will beyond the jurisdiction of the State where it is probated is inoperative, and has no extra-territorial force or validity.

5. ———: EXECUTOR'S SALES OF LANDS WITHIN AND WITHOUT THIS STATE. For the proceeds from the sale and rent of all lands in this State received by the executor, who has been given power by the will to sell real estate, he and his sureties are liable upon his bond; but for the proceeds of sales of land lying in another State, in the absence of evidence showing the will was probated there, neither he nor his bondsmen are liable, nor does such sale pass any title.

*Appeal from Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*W. W. Fry* for appellants.

(1) The form of the bond is merely directory and can not be avoided, because the form of the stat-

ute has been disregarded. *Hicks v. Chouteau*, 12 Mo. 342; *Hall v. Cushing*, 26 Mass. 395. (2) By the will the executor is directed to sell all of his real estate, wherever situated, and pay his debts, etc. In selling the Texas land the executor was "executing the will" as executor and he and his bondsmen are undoubtedly liable for the proceeds of the sale. (3) Although the general principle is that the realty descends to the heir, yet when an executor is authorized by the will to sell the real estate and execute deed to convey the title to the same and he exercises the authority he is liable on his bond as executor if he fails to account for the proceeds. *Dix v. Morris*, 66 Mo. 514; *Lewis v. Carson*, 93 Mo. 587. A will giving power of sale vests the title in the executor at the time of the testators' death, and his deed of the property is a good conveyance. Here the distinction between an executor and administrator is drawn. *Wilson v. Wilson*, 54 Mo. 213; *Bambrick v. Webster Gr. Ch.*, 53 Mo. App. 234. (4) As executor he is responsible and his sureties liable for all assets, obtained in whatever State, by virtue of the will. *Hooper v. Hooper*, 29 W. Va. 276; 2 Woerner on Administration, sec. 537; *Pipkin v. Casey*, 13 Mo. 347. An executor is chargeable with all property of the estate coming to his hands, no matter from what source derived. *Scudder v. Ames*, 89 Mo. 496; Shouler on Executors, sec. 175, p. 236; *Gamble v. Gibson*, 59 Mo. 585; *Lewis v. Carson*, 93 Mo. 587; *State to use v. Scholl*, 47 Mo. 84. (5) An executor can not allege his own wrong to shield himself from liability. *Hartnett v. Fegan*, 3 Mo. App. 1; *Pipkin v. Casey*, 13 Mo. 347.

*George Robertson* for respondents.

(1) This being a statutory action it can be maintained only against the principal and sureties upon the

bond. Any order and judgment can only be enforced "against the executor and his sureties." R. S. 1889, sec. 48. (2) The probate court has no jurisdiction over the trust items. All items as to rent should be stricken from the settlements. *Nichols v. Reyburn*, 55 Mo. App. 1; *Coal Co. v. Slevin*, 56 Mo. App. 107; *In re Rickenbaugh*, 42 Mo. App. 328. (3) The Texas land items should be stricken from the settlements. *Lewis v. Carson*, 93 Mo. 587; *McPike v. McPike*, 111 Mo. 216; *Church v. Robberson*, 71 Mo. 338; *Scudder v. Ames*, 89 Mo. 522.

BURGESS, J.—This proceeding was begun in the probate court of Audrain county under section 48, Revised Statutes 1889, to compel the defendant Gordon, as executor of the last will and testament of J. J. West, deceased, to account with the plaintiff as administrator *de bonis non* with the will annexed of said deceased, and for judgment against said Gordon and his securities and the heirs of William M. Sims one of the sureties now deceased on his bond as such executor. The case went by appeal from the probate to the circuit court of Audrain county.

J. J. West, deceased, died testate. His will is as follows: "Know all men by these presents, that I, Jeremiah J. West, of the county of Audrain and State of Missouri, do make and publish this, my last will and testament.

"*Item first.* I desire, will and direct that all my just debts shall be paid from the proceeds of my property, and to that end I will and direct my executor to sell at public or private sale, and on such terms as may seem best, all or so much of my property as may be necessary for the payment of my debts, and I hereby give him full power and authority to execute such deeds and conveyances to any and all of my

property as may be necessary to convey the title to the same. And I direct my executor to pay my debts as soon as may be after my decease.

"*Item second.* After the payment of my debts it is my will, and I hereby direct, that my executor pay over to my beloved wife, Zelophia West, the full net income and proceeds of all property remaining undisposed of and not necessary for the payment of debts. Said income and proceeds to be paid to my said wife, as it accrues, for the support and maintenance of herself and her children during her natural life, and after the death of my beloved wife I will and direct that all my property remaining undisposed of be sold and the proceeds be divided equally between the following named of my children, that is to say: Jeremiah J. West, Jr., Enoch Bascum West, Mary Jane Cox, Nancy Marvin Fowles, Martha Caples West and Sarah Pierce West, until each one of the above named children shall have received the sum of two thousand dollars, and after the above named of my children shall have received the sum of two thousand dollars each, then it is my will and I hereby direct that the rest and residue of my property be divided among all my children, share and share alike.

"*Item third.* I give and bequeath to my daughter, Louisa Gardner, the sum of five dollars and also an interest or share in the residue of my estate if there shall be any after giving to my other children the sum of two thousand dollars each.

"*Item fourth.* It is my will, desire, and I so direct that my wife retain and keep all my household and kitchen furniture, beds and bedding and two cows, and provisions for one year for herself and family.

"*Item fifth.* I hereby appoint John M. Gordon of Audrain county my executor, and direct him to execute and carry out this, my last will and testament.

"*Item sixth.*   I commit my soul to God, who gave it, and direct that my body be decently buried.   In witness whereof I have hereunto set my hand on this 11th day of April, 1879.          J. J. WEST."

John M. Gordon qualified as executor and as such executed bond as follows:

"We, John M. Gordon as principal and William M. Sims, Chas. W. Baker, C. T. Black and Robert Luckie, Jr., as securities, are held and firmly bound unto the State of Missouri in the sum of ten thousand dollars, for the payment of which we do hereby bind ourselves, our heirs, executors and administrators firmly by these presents.

"Sealed with our seals, and dated at Mexico, in the State aforesaid, this 28th day of April, 1879.

"The condition of the above bond is that if the said John M. Gordon, executor of the last will and testament of J. J. West, deceased, late of Audrain county, Missouri, shall well and faithfully execute the said last will and testament, and shall make true and faithful inventories, returns and settlements of accounts of the estate of the said testator, according to law; and shall, moreover, do and perform all other matters and things touching the execution of said last will and testament, as are or shall be prescribed by law, or enjoined on him by the order, sentence or decree of any court having competent jurisdiction, then this obligation to be void and of no effect; otherwise to remain in full force.

"JOHN M. GORDON,     [SEAL]
"WILLIAM M. SIMS,     [SEAL]
"CHARLES W. BAKER, [SEAL]
"C. T. BLACK,          [SEAL]
"ROBERT LUCKIE, Jr., [SEAL]

"Filed for record April 28th, 1879."

William M. Sims died some time prior to May 25, 1885, leaving a will which was duly probated on that

day in the probate court of Audrain county. Final settlement of his estate was made September 15, 1887. Mrs. Potts and Mrs. Clark were the only heirs of Sims, who with their husbands, J. A. Potts and C. F. Clark, are made defendants. The proceedings were dismissed as to C. T. Black, in the probate court on the twenty-third day of February, 1891. At the September term, 1895, of the Audrain circuit court the death of John M. Gordon was suggested of record, and the suit revived against the defendant Robert Luckie as his administrator, who entered his voluntary appearance.

At the time of West's decease he was the owner of a large personal estate and several tracts of land in the State of Missouri, and several large tracts of land in the State of Texas. Gordon sold the lands in Texas under the power conferred upon him by the will as executor, and as such received the purchase money and executed deeds therefor.

The trial court, in passing upon the case and in rendering judgment, said: "The plaintiff has filed an itemized statement of the amounts he contends the defendant should be charged with in the final settlement. First and most prominent among them is a balance of the purchase price of land situate in Texas sold by Gordon as executor and only part of the consideration accounted for by him. That he failed to account for $1,529.74 of the purchase price, is proven beyond controversy. The defendants contend, and by their motion in the case so ask, that this court strike out of his settlement a charge made by him against himself of $4,555.68, proceeds of such sale, for the reason he had no authority as executor to sell the land or receive the purchase price and hence could not receive it as executor." The court then rendered the following judgment:

"Now on this February 10, 1896, this cause being called by the court, the said cause having been heard at the last September term and taken under advisement, the court doth find the following items in favor of the plaintiff and against the said John M. Gordon's estate, as follows:

John M. Gordon, Executor ................... ...Dr.,
To estate of J. J. West, deceased.

| | | |
|---|---:|---:|
| Amount received by him from Hy Barker, March 29, 1880....$ | 675 | 56 |
| 6 per cent interest thereon to Jan. 20, 1896................ | 640 | 69 |
| Amount received from Harrison, December 20, 1881 .... ..... | 269 | 50 |
| 6 per cent interest thereon to Jan. 20, 1896..:............ | 227 | 72 |
| Amount received from Harrison, May 10, 1883................ | 44 | 50 |
| 6 per cent interest thereon to Jan. 20, 1896............... | 33 | 88 |
| Amount received from Harrison, balance on Eastern rent, March 1, 1885 ......... ................. ................. | 25 | 00 |
| 6 per cent interest thereon to Jan. 20, 1896 ............. .. | 16 | 22 |
| Commission on interest improperly charged by executor in settlement May 12, 1885, on $377.15.................... | 18 | 85 |
| 6 per cent interest thereon to Jan. 20, 1896.............. | 17 | 38 |
| Excessive commission charged in settlement November 13, 1884, on $1,039.54..................... ...............,...... | 51 | 97 |
| 6 per cent interest thereon to Jan. 20, 1896 .......... .... | 35 | 00 |
| Error in debit account of addition in settlement November 26, 1887......... ................. ................. | 6 | 00 |
| 6 per cent interest thereon to Jan. 20, 1896............... | 2 | 91 |
| Excessive commission charged in settlement, 1882, and again charged in settlement, November 13, 1884, on $573.74.. | 28 | 68 |
| 6 per cent interest thereon to Jan. 20, 1896............... | 19 | 20 |
| Commission on $4,555.68 debit item in second settlement stricken out.. .... ............................ .............. | 227 | 78 |
| | $2,340 | 94 |

"And the court doth further strike from the said settlement of said John M. Gordon the item of $4,555.68 arising from the sale of Texas lands, thereby leaving a balance due the said John M. Gordon's estate of the sum of $2,214.74. Whereupon the court doth order and adjudge that said plaintiff revise his settlement as administrator in accordance herewith, and that costs hereof be adjudged against plaintiff and that execution is issued therefor.

"And it is further ordered that a certified copy of this judgment be certified back to the probate court of Audrain county."

From the judgment plaintiff appeals.

The question of chief importance involved in this appeal is as to whether or not Gordon and his sureties can be held liable upon his bond as executor of West for the moneys received by him for the Texas lands which were sold and deeded by him to the purchasers thereof, as such executor. There seems to be no question as to the sale of these lands by Gordon and the receipt of the purchase money by him. Indeed the court found that he failed to account for $1,529.74 of the purchase price which was received by him, beside he had in a former settlement charged himself with the sum of $4,555.68 proceeds of such sale, but defendants contend that he ought not to be charged with the proceeds of such sale, for the reason that he had no authority as executor to sell the land or receive the purchase money, and therefore could not receive it as executor.

In *Wilson v. Wilson*, 54 Mo. 213, it is held that the difference between an administrator and an executor lies in the fact that the former derives his power from appointment by the probate court, and has no power until appointed, while an executor derives his power from the will, and the property vests in him from the time of the testator's death.

The expression made use of in that case to the effect that the real estate belonging to the testator at the time of his death vested in his executor at that time is not to be understood as vesting the title absolutely and unconditionally in the executor, but rather the power of disposition, for under our laws real estate upon the death of the testator passes to his heirs, sub-

ject to the power of disposal conferred upon his executor by the will, and where the will, as in the case in hand, directs that his lands shall be sold by his executor, it is clear that he is given but the naked power to sell, and that he has no interest in the land. *Herbert v. Smith*, 1 Saxtons Ch. N. J. 141.

In *Aubuchon v. Lory*, 23 Mo. 99, it is said: "The real estate of a deceased person descends, upon his death, to his heirs, or passes to the devisees under his will. By the common law the personal representative, whether executor or administrator, takes no interest in it, and our statute gives him nothing but the naked power to sell for the payment of debts, or to make short leases, under the directions of the county court."

An administrator's power as such does not extend beyond the boundaries of the State in which his letters of administration are granted, nor can he sue in the courts of any State, or take possession of property belonging to his intestate without becoming a trespasser, unless he first qualifies as administrator according to the laws of the State where suit is intended to be brought, or the property is situated. In other words, letters of administration have no extra-territorial force. *Naylor's Adm'r v. Moffatt*, 29 Mo. 126; *Scudder v. Ames*, 89 Mo. 522; *In re Partnership Estate of Ames & Co.*, 52 Mo. 290; *State ex rel. v. Osborn*, 71 Mo. 86; *McPike v. McPike*, 111 Mo. 216. An administrator's actions are controlled by the probate court, under whose supervision they come, and while an executor derives his power to act as such with respect to the transfer of real estate and can dispose of it as provided by the will by which he is appointed executor without first obtaining an order of court, he can only convey such property in conformity with the laws of the State where he attempts to operate under the will, and not from the will alone, and he and his sureties can not

therefore be held liable upon his bond as executor for moneys received by him for lands sold in another State, not in compliance with the laws of that State. There are authorities, however, which announce a different rule, that is, which hold that where an executor qualifies as such in one State, and sells lands in another State which belonged to his testator, under the power conferred upon him by the will, the executor and his securities will be required to account for the proceeds arising from the sale of such property by him. *Hooper v. Hooper*, 29 West Va. 276; 2 Woerner on The American Law of Administration, sec. 537; *The Judge of Probate v. Heydock et al.*, 8 N. H. 491. But the weight of authority unquestionably is in accord with the rule announced by this court, through SHERWOOD, J., in *Cabanne et al. v. T. K. Skinker, Ex'r et al.*, 56 Mo. 367, in which it is said: "So far as concerns the realty, a will beyond the jurisdiction where it is probated is inoperative, and has no extra-territorial force or validity; and the executor of such will can not, because of his appointment in accordance with the laws of one State, thereby acquire authority to sue for, or in any manner intermeddle with, the property or effects of his testator, whether real or personal, in *another* State, unless the will be there proven, or the laws of such State dispensing with the probate anew confer the requisite permission. *Kerr v. Moon*, 9 Wheat. 565; *Doe v. McFarland*, 9 Cranch, 151; Sto. Conf. L., sec. 474; *McCormick v. Sullivant*, 10 Wheat. 192; *Lucas v. Tucker*, 17 Ind. 41; *Wills v. Cowper*, 2 Ohio St. 124. Under the circumstances then, as detailed in the petition, Cabanne, the testator, must be regarded as having died intestate as to whatever lands in the territory of Colorado he was possessed of at the time of his decease; and those lands of course, in consequence of his intestacy, descended in conformity to the laws of that terri-

tory. to his heirs at law. But as to who those heirs are, no information is afforded us. There is not the remotest information contained in the petition that the plaintiffs are those heirs, nor is it shown that the plaintiffs had any title, either legal or equitable, in the property in Colorado. If they had no interest in the land itself, they certainly could have none in the proceeds arising from the sale thereof. It being out of the power of the executor, as such, to have any control over, or right to interfere with, the property situate in Colorado, it must inevitably follow that neither he nor his sureties can, in consequence of any acts done in Colorado, be held liable on the bond given for the faithful performance of the duties pertaining to the executorship in this State.''

In *McCormick et al. v. Sullivant et al.*, 10 Wheat. 192, it was held that title to lands by devise can be acquired only under a will duly proved and recorded, according to the law of the State in which the lands lie; and that the probate of a will in the State of Pennsylvania gave it no validity whatever in respect to lands situated in the State of Ohio, and as to which the court considered the deceased as having died intestate, and consequently that they descended to his heirs.

In *Kerr v. Moon*, 9 Wheaton, 565, it was held that: ''It is an unquestionable principle of general law that the title to, and the disposition of, real property must be exclusively subject to the laws of the country where it is situated.'' And it is also ruled in the same case that where lands were situated in Ohio which were claimed under a will made and proved in Kentucky, it was essential to the establishment of the title to prove that the will had been proven and recorded according to the laws of Ohio.

The same rule is announced in Story's Conflict of Laws, sec. 474, and in *Lucas v. Tucker*, 17 Ind. 41.

There was no evidence in this case that the will of West had ever been probated in the State of Texas, in the absence of which Gordon's sales of the lands in that State were without authority, passed no title, and he and his sureties upon his bond as executor are not responsible for the moneys received by him in consideration for such sales.

But for the proceeds of all lands received by him from the sale or rent of lands in this State he and his sureties are liable upon his bond. *Dix v. Morris*, 1 Mo. App. 93; *Gamble v. Gibson*, 59 Mo. 585.

Finding no reversible error in the record, the judgment is affirmed. BARCLAY, C. J., GANTT and SHERWOOD, JJ., concur; BRACE and ROBINSON, JJ., dissent; MACFARLANE, J., not sitting.