In the Matter of the Estate of JOHN W. THOMPSON, SARA E THOMPSON and MARCELLA THOMPSON BERKLEY, Administratrices, v. W. G. COYLE & COMPANY, INC., Appellant.—97 S. W. (2d) 93.

Division One, September 24, 1936.

*Douglas W. Robert* for appellant; *Single & Tyler* and *Dart & Dart* of counsel.

*Donnell & McDonald* for respondents.

BRADLEY, C.—This cause originated in the Probate Court of St. Louis. W. G. Coyle & Company filed a motion to set aside an order approving a final settlement, ordering distribution and discharging the administratrices. The probate court sustained the motion and set aside as asked. Respondent administratrices appealed to the circuit court where the probate court's order was reversed with direction to reinstate the original order, and Coyle & Company appealed.

John W. Thompson, domiciled in St. Louis, died intestate May 3, 1926, and Sara E. Thompson and Marcella Thompson Berkley, widow and daughter, respectively, were appointed, May 7, 1926, by the Probate Court of St. Louis, administratrices of the estate. Intestate, prior to his death, carried on extensive operations at and about New Orleans, and on November 25, 1925, he chartered at New Orleans, for

sixty days, a tugboat, Ella Andrews, from appellant, W. G. Coyle & Company, a Louisiana corporation. The tug, while being operated by intestate on the Mississippi River near New Orleans, sank on January 7, 1926, and was lost. March 22, 1927, Coyle & Company filed libel in the United States District Court, Eastern District of Louisiana, against the administratrices to recover from the estate, $40,000 for the loss of the Ella Andrews. Process in the libel suit was served, March 23, 1927, in New Orleans on R. A. Thompson, alleged agent of administratrices. Answer in the libel suits was filed for the administratrices (so claimed, but denied by them) October 31, 1927. Administratrices filed their final settlement in the Probate Court of St. Louis December 27, 1927, which was approved and they were, on the same day, discharged. June 5, 1931, Coyle & Company filed motion in the Probate Court of St. Louis to set aside the order of December 27, 1927, approving final settlement, ordering distribution and discharging administratrices. The libel suit went to interlocutory judgment July 17, 1931, by which it was adjudged that the libellant, Coyle & Company, recover of the Thompson estate ''the damages sustained by reason'' of the loss of the Ella Andrews, and a commissioner was appointed to ascertain the damages. October 12, 1931, the Probate Court of St. Louis sustained the motion to set aside the order of December 27, 1927, and ordered that the ''final settlement be continued from term to term, during the pendency of the aforesaid suit in the United States District Court at New Orleans, Louisiana, as prayed for in said motion.''

We shall hereinafter refer to W. G. Coyle & Company as appellant and to administratrices as respondents. Appellant makes seventeen separate assignments, but all, necessary to consider, go to the proposition that the circuit court erred in holding valid the order of the probate court approving the final settlement, ordering distribution and discharging the respondents as administratrices of the estate. Respondents were the only heirs of the intestate and distribution was made on same day final settlement was filed and approved, hence the order of discharge on same day.

Assuming that the service of process in the libel suit on the alleged agent of respondents in New Orleans met the requirement of Section 185, Revised Statutes 1929, Missouri Statutes Annotated, page 115 (hereinafter set out), then the chief issue involved is embraced within the question: Can a demand against an estate being administered in Missouri be lawfully *exhibited* by the service on an executor or administrator of process issued by any court outside Missouri, and then *establish* the demand in such court, so as to make the demand allowable by the probate court in charge of the estate in this State? Respondents duly published notice of the grant to them of letters of administration, the first insertion being on May 8, 1926,

and, as stated, process was served on an alleged agent of respondents in New Orleans on March 23, 1927. Sections 186 and 187, Revised Statutes 1929 (Mo. Stat. Ann., pp. 115, 117), concern exhibition of a demand and are as follows:

Section 186: ''Any person may exhibit his demands against such estate by serving upon the executor or administrator a notice, in writing, stating the amount and nature of his claim, with a copy of the instrument of writing or account upon which the claim is founded; and such claim shall be considered legally exhibited from the time of serving such notice, or a waiver of such notice, in writing, by the executor or administrator.''

Section 187: ''No claimant shall avail himself of the benefit of the preceding section unless he shall exhibit his demand to the administrator in the manner provided by law, for allowance, within one year after the date of granting of the first letters on the estate, or the first insertion of the publication of notice of the grant of such letters as provided for in Section 183 of this article, nor unless he shall within the said time also present his said demand to the probate court.''

The manner prescribed by Section 186 is one way of exhibiting demands against an estate, but such is not the only way. Sections 185 and 189, Revised Statutes 1929 (Mo. Stat. Ann., pp. 116, 121), provide:

Section 185: ''All actions commenced against such executor or administrator, after death of the deceased, shall be considered demands legally exhibited against such estate from the time of serving the original process on such executor or administrator.''

Section 189: ''Any person having a demand against an estate may establish the same by the judgment or decree of some court of record, in the ordinary course of proceeding. . . .''

Appellant contends that its demand or claim against the estate was properly *exhibited* by the service of process (on the alleged agent) in the libel suit in the Federal Court at New Orleans. As noted, the libel suit was filed March 22, 1927, and process served on the alleged agent March 23rd, and respondents' letters of administration were issued May 7, 1926, and first insertion of publication of notice was on May 8, 1926, therefore, if appellant could properly *exhibit* its demand by the service of process, in the libel suit, on the alleged agent, then such demand was exhibited in due time. Following the service of process in the libel suit, answer was filed for respondents, but they contend such was without their authority. However, for the purpose of the question in hand, we will assume that service of process in the libel suit was the same as if it had been personally served on respondents in New Orleans. The theory of appellant is that the order of the Probate Court of St. Louis (of December 27, 1927) was premature in that there was then lawfully *pending* the admiralty suit

against the Thompson estate. The Probate Court of St. Louis could not lawfully approve the final settlement, close the estate and discharge respondent administratrices while there were demands "legally pending and undisposed of in either the probate court or other courts of record, and there are available asset for their satisfaction." [State ex rel. Knisely v. Holtcamp, 266 Mo. 347, l. c. 371, 181 S. W. 1007.] It will be noted that Section 185, supra, says that "all actions commenced against such executor or administrator, after death of deceased, shall be considered demands legally exhibited against such estate from the time of serving the original process on such executor or administrator;" and that Section 189 provides that "any person having a demand against an estate may establish the same by the judgment or decree *of some court of record.*" (Italics ours.) Appellant says that the phrase, *of some court of record,* as used in the statute is broad enough to cover *any court* of record, that has jurisdiction of the subject matter, whether such court of record is in Missouri or elsewhere, provided the legal representative of the estate can be lawfully served in such court, domestic or foreign, or enters general appearance. If the service of process in the admiralty suit in the Federal Court at New Orleans did not amount to *exhibiting* appellant's demand, under Section 185, Revised Statutes 1929, then such demand is barred, because not *exhibited* in one year. [Sec. 183, R. S. 1929, Mo. Stat. Ann., sec. 183, p. 111.] We shall, hereinafter, consider specifically as to whether or not any court, State or Federal, outside the State of Missouri, can be included within the phrase "of some court of record" as used in Section 189, Revised Statutes 1929.

■ It appears that the judgment of the trial court, reinstating the order of the probate court of December 27, 1927, is based on the ground "that the administratrices could not be and were not legally sued in the State of Louisiana; that said administratrices had no legal authority to waive or accept service of process or be served with process; nor could any one do any of such things on their behalf; and that there was no service, acceptance or waiver or service of process by estoppel." Respondents derived their powers as administratrices solely from the *appointment* by the Probate Court of St. Louis (Wilson v. Wilson, 54 Mo. 213, l. c. 215), and the letters of administration issued to respondents (absent an authorizing statute in Louisiana, and there is none) gave them *no* power to function under such letters beyond the territorial limits of Missouri. [Emmons v. Gordon, 140 Mo. 490, l. c. 498 (and cases there cited), 41 S. W. 998; Cabanne v. Skinker, 56 Mo. 357, l. c. 367 and cases there cited; McPike v. McPike, 111 Mo. 216, l. c. 225, 20 S. W. 12; Richardson v. Allen (Mo. App.), 185 S. W. 252; Hartnett v. Langan, 282 Mo. 471, l. c 490, 222 S. W. 403; Bank of Seneca v. Morrison, 200 Mo. App. 169, l. c. 178, 204 S. W. 1119; Vaughan v. Northup, 15 Peters, l. c. 5.] On the

theory that letters of administration do not confer extraterritorial powers, it is the rule generally that an executor or administrator, as such, cannot prosecute a cause in a foreign jurisdiction, absent an authorizing statute in such jurisdiction. [Emmons v. Gordon, supra; Gregory v. McCormick, 120 Mo. 657, 1. c. 663, 25 S. W. 565, and cases there cited; Hines v. Hines, 243 Mo. 480, 1. c. 495, 147 S. W. 774; Fenderson v. Mo. Tie & Timber Co:, 104 Mo. App. 290, 1. c. 295, 78 S. W. 819; Miller v. Hoover, 121 Mo. App. 568, 1. c. 571, 97 S. W. 210; Brown v. Boston & M. Railroad Co. (Mass.), 186 N. E. 59; 18 M. B. L. 3; 45 M. B. L. 35; 24 C. J. 1129; 11 R. C. L. 447; Sec. 507, Restatement of the Law of Conflict of Laws.] The general rule as stated in Restatement of Conflict of Laws is: "In the absence of a statute permitting it, a foreign administrator cannot sue to recover a claim belonging to the decedent." The reason upon which such rule is based is that "the administrator is not himself the creditor, and can sue only as he is empowered to do so by law. He gains no authority by virtue of an appointment as officer of the court of one state to act as officer in another state. He has no official authority as representative in the courts of the second state and cannot sue in a representative capacity there. Nor can he avoid his incapacity to sue in a foreign state by bringing suit through an attorney in fact, or by instituting action in a Federal court." [Restatement of Conflict of Laws under Sec. 507.] Thus we see letters of administration have no extraterritorial force and confer upon the holder no extraterritorial powers.

But appellant says that the question is not, Can a foreign administrator maintain a suit without an authorizing statute where he sues? but that the question is, Can a foreign administrator be lawfully sued as such and brought into a court outside the State issuing his letters? True, such is the question here, but the question as to whether or not a foreign executor or administrator can prosecute a suit, absent an authorizing statute, is, we think, a related subject.

We now take up the subject of suing a foreign administrator on a demand against the estate. Section 512, Restatement of the Law of Conflict of Laws, states the general rule to be that "no action can be maintained against any administrator outside the State of his appointment upon a claim against the estate of the deceased." There are exceptions, under varying facts and conditions, to the general rule that an executor or administrator cannot be sued as such in a state other than the one issuing the letters. Where such suits have been permitted, it appears that they have been quite generally in equity and have been "permitted upon the ground of their necessity to prevent a failure of justice." [24 C. J. 1138.] Corpus Juris (24 C. J., sec. 2721, p. 1138) states the exceptions as follows: "Exceptions to the rule that a foreign representative cannot be sued have been

made in a number of cases, but these exceptions are not universally recognized. Practically all the cases have been suits in equity where peculiar circumstances were involved, and which were permitted upon the ground of their necessity to prevent a failure of justice. The proper rule has been said to be that an action at law should never be allowed to recover a mere money demand, and that suits in equity should be allowed only when necessary to prevent a complete failure of justice. Such suits have been allowed where a foreign representative came into another jurisdiction and took possession of assets belonging to that jurisdiction, or brought with him assets from another jurisdiction, or where he left the jurisdiction of his appointment and became a resident of another jurisdiction. Where a representative appointed in one jurisdiction moves into another, taking with him assets of the foreign appointment, a bill in equity will lie in the latter jurisdiction to compel him to account for such assets to the persons lawfully entitled thereto, where but for the interference of a court of equity there would manifestly be a failure of justice. In such cases, however, he is not held to account as executor or administrator, but as a trustee for those entitled to the effects in his hands, and, to authorize such a proceeding, it must appear that he has assets within the jurisdiction of the court, and that he is accountable to the complaining party as a trustee under a will or as a trustee *ex maleficio*. In cases where a suit against a foreign representative is allowed the nature and extent of his liability will be governed by the laws of the jurisdiction of his appointment, at least to the extent of the assets belonging to that jurisdiction.'' [See, also, 11 R. C. L., sec. 556, p. 451; 1 Woerner on Administration, sec. 164, p. 571.]

The reason for the general rule that an executor or administrator cannot be sued as such outside the State of his appointment is that ''the administrator holds the assets of the decedent which come into his possession subject to the directions of the court which appointed him, and is responsible only to that court. For a court in another state to order payment from assets of the decedent in the hands of the foreign administrator would be an improper interference with the administration by the court of the first state.'' [Restatement Conflict of Laws, under sec. 512.]

But in the instant cause it is contended, in effect, that respondents recognized the service of process in the libel suit, and, without protest, filed answer and contested. However, the general rule undoubtedly is that ''the appearance of a foreign administrator in a suit brought against him in his representative capacity . . . does not render a judgment in such suit provable there or elsewhere as a claim against the estate.'' [Sec. 513, Restatement of the Law of Conflict of Laws; Flandrow v. Hammond, 43 N. Y. Supp. 143; Burrowes v. Goodman, 50 Fed. (2d) 92; 77 A. L. R. 249; Hopper v.

Hopper, 125 N. Y. 400, 26 N. E. 457; Braithwaite v. Harvey, Admr. (Mont.), 27 L. R. A. 101.] In the Lawyers' Reports Annotated note to the Braithwaite case it is stated: "The decisions of the courts upon the question of the right of an executor or administrator to defend an action, brought in a foreign jurisdiction, wherein letters testamentary or of administration have not been taken out, in his representative capacity, establish the doctrine that he has no power to defend, and that a judgment thus rendered against him in such capacity, being wholly unauthorized, cannot be enforced against the estate of the decedent, and that such executor or administrator must be sued in the courts of the state or country granting administration, to which alone he is accountable; his authority being limited, and when exceeded not binding upon the estate of the deceased." In support of the rule as announced in the note numerous cases from many jurisdictions are cited.

In the Burrowes case, supra, plaintiff was a receiver of a national bank in North Carolina. Defendant was executrix under the will of Harry Goodman "by appointment of the register of wills of Philadelphia County, Pa." All the property of the estate was in Pennsylvania. The testator owned 10 shares of the stock of the national bank in North Carolina. The Comptroller of the Currency levied an assessment on the stockholders of the bank, and the amount levied against the testator was $1000. Suit was brought against the executrix by the receiver, on the assessment, in the United States District Court of New York. Defendant executrix "appeared generally" and the District Court "held that jurisdiction of the appellant (defendant executrix) might be sustained." The question on appeal (to the Circuit Court of Appeals) was "whether a foreign executrix, having entered a general appearance, may submit to the jurisdiction of a court outside the district where she has been appointed to administer the estate." There was no statute in New York authorizing a suit by or against a foreign executor. In ruling the question the Circuit Court of Appeals said: "Ordinarily an executrix' office is conferred by the appointing judge and is limited to the confines of the domiciliary jurisdiction. To obtain standing in another jurisdiction, in another state, he must have the permission of the laws of that state. His recognition to title or assumption of obligation is by consent of the state or through ancillary letters. With no recognition accorded by New York State, appellant could not sue and she cannot force herself upon the court's jurisdiction." In support of the ruling the court cited Moore v. Mitchell, 281 U. S. 18, 50 Sup. Ct. 175, 74 L. Ed. 673. *Certiorari* was denied in the Burrowes case. 284 U. S. 650, 52 Sup. Ct. 30, 76 L. Ed. 551. The American Law Reports note (77 A. L. R. 252) to the Burrowes case states the general rule to be that "the weight of authority supports the doctrine that an executor or

administrator appointed in another state, and not taking out ancillary letters in the State in which he is sued, cannot, by entering a voluntary appearance in an action against him, or by otherwise submitting himself to the jurisdiction of the court, confer upon the court jurisdiction to render judgment against him in his representative capacity, where there is no property belonging to the estate in the State where the action is brought.''

In Rentschler et al. v. Jamison, Admr., 6 Mo. App. 135, plaintiffs sued, in Illinois, one Garnhart by attachment on the ground of nonresidence and personal property of Garnhart was attached. Garnhart appeared and defended and judgment went against him for $1400. He appealed to the Supreme Court of Illinois, which court reversed the judgment and remanded the cause. Garnhart died and Jamison was appointed his administrator by the Probate Court of St. Louis County, Missouri. After Jamison's appointment, plaintiffs amended their petition so as to make administrator Jamison a party defendant and got service on him by publication. Administrator Jamison did not appear and judgment went against him by default. A transcript of this judgment was presented to administrator Jamison in St. Louis County, and he waived notice and on trial in the probate court judgment was for the administrator. It was contended that the publication service on administrator Jamison was good. The St. Louis Court of Appeals held that it was not, and then said: ''But suppose Jamison had chosen to appear and contest this case and on its merits in Illinois, submitting himself to the jurisdiction of the court, what judgment could have been rendered that would avail the plaintiff here? He could not claim, of course, a personal judgment against the administrator, and a judgment against the estate of Garnhart must have been futile. The court in Illinois could have no control over the estate of deceased in Missouri. A judgment in another State against the administrator in Missouri could not be enforced against the estate here, no matter what service was made upon the administrator, nor even if he appeared in court during the trial and personally defended the action. The administrator could not, by any action on his part, permit a claim against the estate of his intestate in Missouri to be adjudicated upon by a court in Illinois; and a judgment obtained in Illinois after the death of Garnhart, against his administrator appointed in Missouri, could be no evidence of indebtedness in an action against the estate here. The courts of another State cannot enforce claims against the estates in Missouri of deceased persons, nor can the administrator here go into another and foreign jurisdiction and there permit claims to be adjudicated against the estate.''

In the instant case it is conceded that the excerpt above quoted from the Rentschler v. Jamison case was *obiter* in that case, but the law was

well stated and this case was cited in the A. L. R. note, 77 A. L. R. 252, but designated as *dictum*.

■ It is conceded that Louisiana has no statute authorizing a foreign executor or administrator to sue or be sued in that state and such being so, it is our conclusion and we so rule that the service of process (assuming the service to have been personally on respondents) in New Orleans in the admiralty suit was not an *exhibition* of the demand of appellant against the Thompson estate as required by Section 185, Revised Statutes 1929; and we further rule that the voluntary appearance (assuming the appearance to be such) of respondents in the admiralty suit in New Orleans did not confer upon the Federal Court in New Orleans jurisdiction to render judgment against respondents in their representative capacity; and further, that the judgment rendered in the admiralty suit does not and cannot *establish* a valid demand for allowance against the Thompson estate in the Probate Court of St. Louis.

It is urged that the respondents are estopped to deny that they were properly in the Federal Court in Louisiana. This estoppel theory is based on the alleged participation of respondents through their agents and attorneys, but it is not necessary to go into this phase of the present cause. We reached our conclusion above, assuming that respondents were personally served in New Orleans with process in the libel suit and in pursuance thereof voluntarily filed answer and contested.

■ But appellant says that the respondents *meddled* with the assets of the Thompson estate in Louisiana, and that such made them subject to the jurisdiction of the admiralty court in Louisiana. In Emmons v. Gordon, supra (140 Mo. l. c. 498) it is said: "An administrator's power as such does not extend beyond the boundaries of the State in which his letters of administration are granted, nor can he sue in the courts of any State, or take possession of property belonging to his intestate without becoming a trespasser, unless he first qualifies as administrator according to the laws of the State where suit is intended to be brought, or the property is situated. In other words, letters of administration have no extraterritorial force." If respondents meddled with the assets of the Thompson estate in Louisiana they may have been trespassers (which we do not decide), but such would not make the service of process in the admiralty suit an *exhibition* of the demand of appellants against the Thompson estate in Missouri, as required by Section 185, Revised Statutes 1929; nor would such meddling give validity to the admiralty judgment so as to make it an *established* demand for allowance against the Thompson estate in the Probate Court of St. Louis.

■ It is contended by appellant that the judgment rendered by the trial court was in violation of Section 1, Article 4, Constitution

of the United States, the full faith and credit clause. This section provides: "Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state. . . ." By the letter, this section applies only to public acts, records and judicial proceedings of the *States*, but construction has made it equally applicable to judgments in the Federal courts. "Although judgments of the Federal courts are not, strictly speaking, within the constitutional provision requiring state courts to give 'full faith and credit' to judgments from other states, yet the Federal courts are not to be regarded by the state courts as strictly foreign tribunals; but their judgments are to be accorded, in the courts of any state, the same effect, respect, and conclusiveness as would be accorded in similar circumstances to the judgments of a state tribunal of equal authority." [34 C. J. 1160, and Missouri cases cited in Note 59.]

But the law last stated is not all on the subject. "Neither the constitutional provision that full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state, nor the act of Congress passed in pursuance thereof, prevents an inquiry into the jurisdiction of the court by which a judgment offered in evidence was rendered, and accordingly when a judgment recovered in one state is pleaded or presented in the courts of another state, whether as a cause of action or a defense or as evidence, the party sought to be bound or affected by it may always impeach its validity and escape its effect by showing that the court which rendered it had no jurisdiction over the parties or the subject matter of the action. And the recitals in the record of any such judgment, on the subject of jurisdiction, may be controverted by extraneous evidence." [Stuart v. Dickinson, 290 Mo. 516, l. c. 547, 235 S. W. 446, l. c. 455, and cases there cited.]

There is another question presented, which we mentioned, supra, viz.: Can any court, State or Federal, outside the State of Missouri, be included within the phrase "of some court of record" as used in Section 189, Revised Statutes 1929? We have, in effect, already ruled this question, but here we shall consider it more specifically. Though repetitious, but for convenience, we again set out that part of Section 189 concerned. The section says that "any person having a demand against an estate may establish the same by the judgment or decree of some court of record, in the ordinary course of proceeding." To support their contention as to the scope of the phrase, appellants cite three Missouri cases: Madison County Bank v. Suman's Admr., 79 Mo. 527; Stephens v. Bernays, Executrix, 119 Mo. 143, 24 S. W. 46.; and State ex rel. Dean et al., Executors, v. Daues et al., 321 Mo. 1126, 14 S. W. (2d) 990. In Madison County Bank v. Suman's Administrator, plaintiff bank, a corporation of Indiana, filed a petition in the Federal Court, Western District of

Missouri, against the administrator of Jacob Suman, deceased, to recover judgment on two promissory notes executed by Suman in his lifetime. Suman died in Barton County, Missouri, and the probate court of that county appointed the administrator. Process of the Federal Court was served on the administrator and judgment went in favor of plaintiff bank. Afterwards, this judgment was presented to the Probate Court of Barton County for allowance against the Suman estate. Allowance was made for the amount of the judgment and placed in the fifth class. The administrator appealed to the circuit court where the claim was again allowed and certified back to the probate court with direction to place it in the sixth class. The bank appealed, and on appeal the judgment of the circuit court was affirmed. The scope of what is now Section 189 was not discussed. So far as appears it was assumed that the claim could be *exhibited* by the service of process from, and could be *established* in, a Federal Court in a Missouri district.

In the Stephens case, supra, a claim was filed in the Probate Court of St. Louis, for classification, by the receiver of a national bank of St. Louis. The claim or demand was against the estate of Bernays, and was based on a judgment of the United States District Court, Eastern District of Missouri, in favor of the receiver of the bank and against the executrix, on an assessment of thirty-five shares of stock of the bank, which was owned by the Bernays estate when the bank failed. It was contended that the United States District Court did not have jurisdiction of the subject matter and that the judgment in that court was void. The contention was "that the probate court and the circuit court and other courts of record, under the law of the State, having cognizance of the subject matter of such actions, alone have jurisdiction to establish claims against the estate of deceased persons." The court held that "the statute (now Sec. 189) does not limit the courts of record, which are given jurisdiction to establish demands, to courts exercising their functions under the laws of the State, but any 'court of record' having jurisdiction of the matter involved and of the parties to the suit are included within its broad terms." There is nothing in State ex rel. Dean v. Daues on the question here. In that case the Madison County Bank case, supra, was cited, but not on any question about what is now Section 189.

It will be observed that the Federal Courts mentioned in the Madison County Bank and Stephens cases, supra, were Federal Courts in Missouri and while what is said in the Stephens case, quoted above, is rather broad, there was no question there about any Federal Court except one in Missouri. An administrator or executor appointed in one state cannot sue in a Federal Court in another State. "From the earliest times, Federal Courts in one state have declined to take

jurisdiction of suits by executors and administrators appointed in another state.'' [Moore v. Mitchell, 281 U. S. 18, 50 Sup. Ct. 175, 74 L. Ed. 673.] In Linn County Bank v. Clifton, 263 Mo. 200, 1. c. 214, 172 S. W. 388, it is said: ''In the exposition of the statutory and constitutional scheme thus outlined, it will do to say that it is part and parcel of the common knowledge of Missouri-made law that, beginning almost with its admission to the Union, it has been the uniform and consistent general public policy of the State to allow suits against administrators and executors (to establish claims against estates) to be prosecuted in courts of record other than probate courts 'in accordance with the ordinary course of proceeding;' '' but there, the jurisdiction of a circuit court of this State was in question. What is now Section 189, so far as the question here is concerned, was enacted in 1825. See Volume 1, Revised Statutes, 1825, section 52, page 113, and through the years no court, so far as shown in the briefs in the instant case, or from our own investigation, has held that the phrase ''of some court of record'' as used in Section 189, may include *any* court outside of Missouri. Common reasons impels the conclusion that the phrase in question has reference only to courts of record in Missouri, which would include Federal Courts in Missouri, if a presented case involved Federal jurisdiction, and we so rule. While not in point on the scope of the mooted phrase, yet analogous somewhat in principle, are In re Estate of Quirk, 257 Mo. 422, 1. c. 433, 165 S. W. 1062, 51 L. R. A. (N. S.) 817; State ex rel. Harvey v. Wright, 251 Mo. 325, 1. c. 343, 158 S. W. 823, Ann. Cas. 1915A, 588.

■ Appellants say that respondents, their attorney and agent were guilty of fraud in closing the Thompson estate ''while the admiralty suit was pending.'' Our disposition of appellant's theory based on that suit suffices here. We might say, in passing, that counsel for respondents in the trial court of the present cause (not counsel representing respondents here), by indirection at least, imputed bad faith to counsel in New Orleans who represented (or thought he did) administratrices in the libel suit. The deposition of the New Orleans counsel was taken and appears in the record here. There is nothing disclosed in the whole record that justifies the imputation of bad faith to the New Orleans counsel. Nor is there anything in the record that justifies the charge of fraud or bad faith on the part of the administratrices or their attorney who represented them throughout the proceedings in the probate court and through the trial court of the present cause.

The judgment should be affirmed and it is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.