TUFTS, Administrator, v. LATSHAW, Assignee, Appellant.

### Division Two, February 24, 1903.

1. **Finding of Facts by Referee: PRESUMPTION.** The finding of facts by a referee stands as the verdict of a jury; and, like the verdict of a jury, where there is any evidence to support it, the Supreme Court will presume that the evidence before the referee was properly weighed and the proper effect given to it.

2. ————: EXCEPTIONS TO REFEREE'S REPORT: BILL OF EXCEPTIONS. Questions with respect to a referee's finding of facts, in order to be available upon appeal, must be raised by exceptions to the referee's report. And even though such questions are properly raised, the evidence before the referee can only be preserved by bill of exceptions, and where that is absent, it will be presumed that the referee's report, as to such questions, was correct.

3. **Trust Estate: INTERMINGLING FUNDS.** When one who holds property in a fiduciary capacity mixes his own property with it, so that the funds can not be separated nor the amount of each ascertained, the whole becomes, both at law and in equity, the property of the trust estate.

Appeal from Jackson Circuit Court.—*Hon. Edward P. Gates*, Judge.

AFFIRMED.

*C. H. Nearing* for appellant; *R. E. Ball* of counsel.

(1) The evidence wholly fails to support the case stated in the petition and the report of the referee does not undertake to find and the plaintiff did not undertake to prove any definite amount of property belonging to the partnership estate that had passed into the hands of the assignee, or any definite amount of property passing to the assignee which had been purchased with the proceeds of partnership property; and in such case, there was a total failure to prove the facts stated

in the petition, and facts necessary to sustain any such action.  Phillips v. Overfield, 100 Mo. 466; Paul v. Draper, 158 Mo. 197; 48 Central Law Journal 350. (2). No case can be found which contravenes the proposition that even where an action to follow a trust fund will lie, it does so to the extent and only to the extent of the amount of the trust fund or trust property, or amount of the proceeds thereof, that went into the estate of the tortious trustee.  All the cases recognize that it is absolutely necessary to show the amount of the trust fund or property, or the amount of the proceeds, and that these, in fact. were mingled with and became a part of the assets sought to be charged with a preference.  In this case, there is neither any proof of the fact, nor any attempt to prove it.  The court below holds that it is not necessary.  This is not the law. Bircher v. Walther (Mo.), 63 S. W. 691.

*Elijah Robinson* and *C. S. Owsley* for respondent.

(1)  That property held in a fiduciary capacity, or the proceeds of such property, may be recovered wherever found, unless in the hands of a purchaser, for value, without notice, is a proposition so well settled that it can not be disputed.  St. L. Union Society v. Mitchell, 26 Mo. App. 206; Railroad y. McAlpine, 129 U. S. 314; Bank v. Ins. Co., 104 U. S. 54; Olliver v. Piatt, 3 How. 333; May v. LeClair, 11 Wall. 217; United States v. Bank, 96 U. S. 30; Perry on Trusts, sec. 828; Cook v. Tullis, 18 Wall. 341.    (2)    Because of the confusion of property, resulting from the acts and conduct of defendant's grantor, Williams, the plaintiff is entitled to recover from the defendant all of what remains of the' proceeds of the property that came into his hands.    Drew Glass Co. v. Baldwin, 27 Mo. App. 44; Kent's Commentaries, 365; Cooley on Torts, p. 53; Englor v. Offutt, 70 Md. 78, 14 Am. St. 332; Bank v. Ins. Co., 104 U. S. 54; Harrison v. Smith, 83 Mo. 210; Perry on Trusts, sec. 838.    (3)    The point undertaken to be made by appellant as to there being a failure of

proof to sustain the allegations of the petition is wholly without merit. The petition alleges that Williams, instead of winding up the partnership estate, used the assets thereof in continuing the business, and did so continue the business with said assets and the proceeds thereof until he made the assignment to Latshaw, whereupon Latshaw took charge of said assets and sold and disposed of the same. (4) This court will consider only such objections as were raised by the exceptions filed in the trial court. Singer Mfg. Co. v. Givens, 35 Mo. App. 610; Wiggins Ferry Co. v. Railroad, 73 Mo. 419; Underhill v. Pomeroy, 6 Hill 603; Ward v. Craig, 87 N. Y. 550.

BURGESS, J.—Prior to and at the time of the death of W. G. Harvey, which occurred on December 18, 1889, he and one D. W. Williams were partners doing business under the firm name and style of D. W. Williams & Co. When Harvey died, as before stated, Williams qualified as surviving partner and continued the business as before in the firm name. He bought and sold goods and conducted the business as it had been conducted before Harvey's death. In September, 1890, a creditor of the co-partnership estate filed in the probate court a motion to require Williams to give a new bond. This motion was heard on September 22, 1890, and was sustained by the court, and on the same day Williams made an assignment to the defendant Latshaw and delivered to him possession of all the property of D. W. Williams & Co., consisting of a stock of merchandise, notes and accounts, amounting in the aggregate to $71,316.37. The merchandise of which the defendant took possession, was appraised at $39,157.84. This consisted largely of goods that were on hand at the time of Harvey's death. Williams testified that he had, subsequent to Harvey's death, purchased, with the proceeds of goods sold, other goods. And also that he had borrowed money with which he had purchased goods. However, it was conclusively shown by the inventories made by Williams, when he

qualified as surviving partner, and by Latshaw, when the deed of assignment was executed, that practically all of the merchandise on hand at the time Williams made the assignment was the same property that was on hand at the time of Harvey's death. The notes and accounts were what remained uncollected of the notes and accounts due the firm at the time of Harvey's death.

Williams, subsequent to Harvey's death, speculated in whiskey, buying the same in bond. For the purpose of carrying on this speculation he borrowed money from various parties and hypothecated warehouse receipts for whiskey to secure the same. For the purpose of protecting these individual creditors he made the assignment and delivered to defendant the property of D. W. Williams & Co., which was in his possession as such surviving partner.

The papers in this case, including the bill of exceptions, as also the papers in the assignment and the papers in the co-partnership estate, can not be found, and there is, therefore, no means whatever of settling any controverted questions as to the facts.

The cause seems to have been referred to Hon. F. P. Sebree as referee who, after hearing the evidence, submitted to the court his report as follows:

"To the Honorable, the Circuit Court of Jackson County, Missouri:

"This cause having been referred to me by the said court, with directions to hear and decide the issues involved therein, I make and submit the following report. After being duly sworn as referee, I proceeded to hear and take the evidence and herewith return the same.

### "FINDING OF FACTS.

"I find the facts to be, that on and prior to the 18th day of May, 1889, David W. Williams and William C. Harvey were partners engaged in the wholesale liquor business at Kansas City, Missouri, under the

firm name of D. W. Williams & Co.   On said date said
William C. Harvey  died intestate; and the plaintiff,
Freeling Tufts, thereupon was appointed, and is yet,
the administrator of the individual estate of the said
Harvey. The surviving partner of the said firm, David
W. Williams, on or about the 23rd day of May, 1889,
qualified as the administrator of the said partnership
estate, and as such took charge of the assets thereof,
which at the time were appraised at $149,062.97, the
stock of merchandise on hand, furniture and fixtures,
being appraised at $54,658.58, and the accounts and
bills receivable being appraised at $94,365.59.    The
liabilities of the firm amounted to $87,062.18.   David
W. Williams continued to conduct the business at the
same place and under the same name of D. W. Wil-
liams & Company, selling and disposing of goods, buy-
ing goods and replenishing the said stock with the pro-
ceeds of collections of said accounts and bills and from
sales of goods and from money borrowed, and collect-
ing the accounts and bills receivable and making pay-
ments on the debts of the firm in the usual course of the
business as it was conducted by the firm before the
death of the said Harvey, until the 22nd day of Sep-
tember, 1890, when he made a general assignment for
the benefit of his creditors, to the defendant Latshaw
which is hereafter referred to.

"The stock of goods, furniture and fixtures of the
partnership estate of D. W. Williams & Company were
of the value put upon them by the appraisers, to-wit,
$54,658.58; and D. W. Williams collected from the
notes and accounts the sum of $14,154.83, making a
total of $68,813.41.

"On the 12th day of September, 1890, one of the
creditors of the estate of D. W. Williams & Company
gave notice to D. W. Williams, the administrator of
the partnership estate, that it would on the 22nd day
of September, 1890, or as soon thereafter as it could be
heard, apply to the probate court of Jackson county,
Missouri, for an order on him to give a new bond, as
such administrator, for the reason that the sureties on

his bond were about to become non-residents of Missouri, that they had disposed of and removed their property beyond the jurisdiction of the court, and were insufficient.

"On the 21st day of September, 1890, the application for a new bond was heard by the probate court and the said court made an order on said D. W. Williams to give a new bond in the sum of fifty thousand dollars within five days.

"On the thirtieth of September, 1890, the probate court found that said Williams had failed to give such bond and thereupon revoked his letters of administration and ordered that he have no further authority over the assets of the estate, and appointed the plaintiff the administrator of the said estate and ordered the estate into his hands.

"On the 22nd day of September, 1890, the day set in the notice for the applying for the order for a new bond, the said D. W. Williams made the deed of assignment to the defendant, Latshaw, in which was included the said stock of goods then on hand, the book accounts and bills receivable and the interest of said D. W. Williams in certain real estate.

"The defendant, H. J. Latshaw, at once qualified as assignee and took the assigned property into his possession and had the same invoiced and appraised. The appraisement shows that the assigned estate was of the value of $71,361.37, made up of the following items, viz:

| | | |
|---|---:|---:|
| Bills receivable | $ 8,736 | 32 |
| City accounts | 8,372 | 88 |
| Country accounts | 2,167 | 16 |
| Interest on note | 31 | 03 |
| Cash on hand | 1 | 14 |
| Merchandise including fixtures | 39,157 | 84 |
| Total merchandise, acc'ts, etc | $71,361 | 37 |

"The merchandise assigned to defendant Latshaw consisted partly of goods which were on hand at the

time of the death of William C. Harvey, partly of the goods purchased with the proceeds of the sales of goods which were on hand at the time of his death, and partly of goods purchased with money borrowed by Williams after the death of said Harvey, but there was no separate account kept of these several lots of goods nor of the sales therefrom, and it is impossible to separate or distinguish the goods of the several lots or the proceeds of sales that were made from them. The accounts and notes that were assigned to defendant Latshaw consist partly of accounts and notes in the conduct of the business after the death of said Harvey, and the proceeds of accounts and notes collected by said Latshaw were derived from both classes of said notes and accounts, but the amount of the collections from each class can not be determined from the evidence.

''From the sales of merchandise, furniture and fixtures and collection of notes and accounts the defendant Latshaw received and had on hand, after paying certain expenses on May 6, 1895, the sum of $11,241.41, and yet has that amount on hand so far as appears from the evidence.

''After the death of said Harvey, the National Bank of Commerce, a creditor of the co-partnership, had two claims allowed against the estate which still remain unpaid. These are as follows:

August 2, 1889 .................$12,223 31
August, 2, 1889 .................  8,051 06
                                 ——————
                                 $20,274 37

''These were the only demands allowed against the partnership estate, D. W. Williams having adjusted all the other either by payment in full or by giving notes signed D. W. Williams & Co.

''The partnership estate has no property unless it is entitled to the fund here sued for, and D. W. Williams is insolvent and his bond as administrator of the partnership estate is insufficient.

"CONCLUSION.

"This is a suit in equity whereby it is sought by the plaintiff, as administrator of the partnership estate of D. W. Williams & Co., to obtain a judgment or decree against the defendant, who is assignee of D. W. Williams, to pay over to the plaintiff all the funds in his possession, which he holds as such assignee.

"The evidence shows, without room for controversy, that the funds now in the assignee's hands are the proceeds of the old stock of the partnership estate of D. W. Williams & Co., with additions added thereto at times by Williams, which were purchased by the proceeds of sales from the old stock and from collections from the old accounts and from money furnished by Williams from his individual resources, but as no separate showing was or could be made of that part which was purchased by Williams' individual money, it will have to be held that all those funds in the assignee's hands were proceeds of the old partnership estate of D. W. Williams & Co.

"The evidence also shows that the partnership estate is indebted to the National Bank of Commerce in the sum of $20,274.37, with interest thereon from August 2, 1889, amounting to between twenty-seven and thirty thousand dollars, and that such estate is insolvent, having no property whatever, unless the funds in the assignee's hands belong to it.

"It is also clear that D. W. Williams received as surviving partner, in merchandise and fixtures, $54,-658.58, and that he collected on the accounts $14,154.83, making a total of $68,813.41; and that he paid the debts of the partnership estate to the amount of $66,787.81.

"The evidence also satisfactorily proves that D. W. Williams is insolvent, and that his bond as administrator is insufficient.

"Such being the facts, the plaintiff would seem to be entitled to recover, unless one of the following defenses urged by the defendant's counsel should defeat such recovery:

"1.   The first contention of the defendant is that this court has no jurisdiction of the cause of action, as by the law of this State all matters relating to the administration of estates of deceased persons, and the recovery of property belonging to them, belong exclusively to the probate courts.

"From the finding of facts it will be seen that the money in the hands of the defendant is the proceeds of property belonging to the old partnership estate of Williams & Harvey, there having from time to time been added to such property money and property of D. W. Williams.   But the amounts added by Williams were not kept separate, and there is no evidence which tends to distinguish or separate the one from the other.

"In this state of affairs a court of equity alone has the jurisdiction and power to search out and follow up the trust funds and direct what disposition shall be made of it, and it has. always been held in this State that the probate courts have no such equitable powers, the last case being that of Estate of Glover, 127 Mo. 153.   I conclude, therefore, that the court has jurisdiction of the cause of action.

"2.   The defendant's counsel also take the position in their brief that as D. W. Williams had paid or adjusted the debts of the old firm of Williams & Harvey to an amount exceeding by at least $10,000 the value of the estate that came into his hands as administrator thereof, therefore he had the right to use the property of the old estate in making this assignment, and that the assignment ought for that reason to legally vest the property in the defendant.

"The position of counsel is founded, first, on a misconception of the facts.   It is true that Williams testified that he received merchandise and fixtures to the value of $54,858.58, and that he collected on accounts $14,154.83, making a total of $68,813.41, and that he paid on the debts of the estate an amount exceeding this sum by more than $10,000; or, in other words, that he paid on the debts more than $78,813.41.

"While Williams is no doubt honest in his testi-

mony, still his mistake is so evident that there can be no question about it, for the debts of the estate amounted to $87,062.18, and $20,274.37 thereof have never been paid, consequently he could have paid but $66,787.81, being $2,025.60 less than the value of the merchandise and the amount collected by him on the accounts. Furthermore, while Williams swears that he collected on the notes and accounts only about $14,154.83, the evidence fails to show exactly how much more was collected on them by the defendant after they came into his hands, but it does appear that from such collections defendant received at least $4,345. Therefore, if the position of counsel were the correct one as to the law, the defense now being considered would not prevent a recovery of the $6,370.60, as the value of merchandise and collections by Williams and defendant amounted to this and above what Williams paid out on the debts. But I can not agree with counsel in their position as to the law.

"When Williams took charge of this estate as surviving partner there were debts against the estate of $87,062.18. These debts were entitled to be allowed and paid pro rata, so far as the property of the estate would pay them. But it appears that the only debts that were allowed against the estate, amounting to more than $20,000, were the only ones upon which no payments were made, and they remain wholly unpaid.

"An administrator has no right to pay in full a part of the debts and leave other debts entirely unpaid, and then, with the property of the estate still in his possession, claim that as he has paid out as much as the property was worth, the property still on hand does not belong to the estate. Such a doctrine as this would virtually place with the administrator the power to prefer creditors and pay some in full and leave others wholly unpaid. The duty of the administrator is to collect and preserve the estate, and pay it out on the demands allowed pro rata, under orders of the probate court, and when he assumes to do otherwise until all the debts are given their share, the property in his

hands is subject to be used in the payment of such debts, even if he has expended the full value of more of the property of the estate in paying the other debts in full.

"So, in this case, as the defendant stands in the shoes of Williams, having in charge this trust fund, as much within the reach of the court as it would be if Williams himself held it, it seems to me that justice demands that the court take it and replace it in the hands of the administrator of the partnership estate, to be by him administered according to law.

"My finding is that plaintiff is entitled to a judgment; that the defendant pay over to him the said sum of $11,214.41, less proper allowances to the assignee for his unpaid services and expenses.

"COSTS.

A. P. Barnett, as stenographer..........$ 12
F. P. Sebree, referee.................. 150
                                        ————
                                        $162"

Thereafter, and in due time, the defendant filed his exceptions to said report, which, omitting the caption, were as follows:

"Now comes H. J. Latshaw, assignee, defendant, and files his exceptions to the report of Frank Sebree, Esq., referee, both as to the findings of fact and the conclusions of law reported by said referee, and defendant excepts to said report on the following grounds, to-wit:

"First. The findings of the referee are against the evidence, and the weight of the evidence.

"Second. The findings of the referee are against the facts proven in evidence and his conclusions are against the law.

"Third. Because the referee found the fact to be that D. W. Williams, surviving partner of the estate of which plaintiff is now in charge, had not paid out

Vol 172 mo—24.

on the obligations of said partnership as much as the combined value of the property and the amount collected from debts due said estate, whereas, the undisputed testimony shows that said Williams had, in truth, paid out on partnership debts some $10,000 or more in excess of the total value of said estate.

"Fourth.   Because the referee fails in his report to state any account between the partnership estate of which plaintiff is administrator, and to make any finding as to how much, if anything, is due from D. W. Williams to said partnership estate.

"Fifth.   Because the referee erred in admitting in evidence, against the objections of defendant, the purported list of liabilities of said partnership attached to the original inventory of said estate, and in basing his finding of the amount of partnership liabilities on said incompetent and inadmissible evidence.

"Sixth.   Because the referee erred in his conclusion of law that it was necessary for an accounting to be had in the probate court, between plaintiff and D. W. Williams, and an indebtedness by the latter to the estate there found and adjudged, as a condition precedent to the right of plaintiff to maintain this action in the circuit court.

"Seventh.   Because the referee erred in his conclusion of law that it was immaterial even if Williams had paid out the full value of the estate to its creditors, and more besides of his own means, and in holding that plaintiff is entitled to recover the entire fund in controversy, regardless of whether there is any indebtedness from Williams to the estate and regardless of how small a proportion of the fund may be the proceeds of partnership property, or whether the estate has been fully compensated by Williams for such property.

"Wherefore, defendant prays that his exceptions to said report be sustained, that the findings and conclusions of the referee be set aside, and that on the evidence and record findings be entered for defendant and plaintiff's petition dismissed."

Thereafter, upon the hearing of said exceptions, the same were by the court overruled, and to the action of the court in overruling same, defendant then and there duly excepted at the time.

And thereupon the court rendered the following judgment in said cause:

"Now, at this day come said parties by their respective attorneys the said plaintiff, by C. S. Owsley and Elijah Robinson, his attorneys, and the said defendant, by R. E. Ball and C. H. Nearing, his attorneys, and the exceptions, heretofore filed by the defendant herein, to the report of the referee heretofore filed in this cause, coming on to be heard, and, being admitted to the court and by the court duly heard and considered, are by the court overruled, and the said report of the referee is by the court approved and confirmed.

"It is therefore ordered, adjudged and decreed by the court that the said defendant, as assignee of D. W. Williams & Co., as aforesaid, pay to said plaintiff, as administrator of the estate of the said W. G. Harvey, deceased, the funds in his hands, amounting to the sum of eleven thousand two hundred and fourteen dollars and forty-one cents, and that said plaintiff have and recover of said defendant said sum, together with his said costs and charges in and about this suit laid out and expended; and that execution may issue to enforce this judgment.

"And it is further ordered by the court that a fee of one hundred and fifty dollars be and the same is hereby allowed to Frank P. Sebree for his services as referee in this cause; and that a fee of twelve dollars be and the same is hereby allowed to Fred. P. Barnett for his services as stenographer in this cause, and that said fees be taxed as costs in this cause."

Thereafter defendant filed motions for new trial and in arrest which being overruled he saved his exceptions and brings the case to this court by appeal for review.

It has been held by this court in numerous cases that the finding of facts by a referee stands as the ver-

dict of a jury; and where there is any evidence to support it, the Supreme Court will presume that the evidence before him was properly weighed and the proper effect given to it. [Western Boatmen's Benev. Asso. v. Kribben, 48 Mo. 37; Franz v. Dietrick, 49 Mo. 95; Gimbel v. Pignero, 62 Mo. 240; Young v. Powell, 87 Mo. 128; Wiggins Ferry Co. v. Railroad, 73 Mo. 389; Chew v. Ellingwood, 86 Mo. 260; Darling v. Potts, 118 Mo. 506.] And especially is this so where the bill of exceptions can not be found, as in the case in hand, and there is no means of settling any controverted question as to what the evidence was, with respect thereto.

It is claimed by defendant that even if the action be construed as one to impress a fund arising from intermingled trust and individual property, there is no proof, or attempt to prove, that the assets assigned to defendant were any part of the original partnership stock, or that such assets or any part thereof were bought with the proceeds of the original partnership estate. But no such point was raised by the exceptions to the report of the referee, and in order to be available upon this appeal they should have been pointed out in the exceptions to the report, and as this was not done they can not be considered. [Wiggins Ferry Co. v. Railroad, 73 Mo. 389; Singer Manf. Co. v. Givens, 35 Mo. App. 602; Ward v. Craig, 87 N. Y. 550; Pomeroy v. Underhill, 7 Hill 388.] But even if these questions were properly raised by the exceptions to the referee's report, the evidence before him could only have been preserved by bill of exceptions and as that was lost, and is not therefore embraced in the record, we have no means before us by which to determine these questions, in the absence of which the presumption must be indulged that the report is in these respects correct.

The point is made by defendant that the evidence did not sustain the allegations of the petition, but we do not agree to this contention.

The petition alleges that Williams, instead of settling up the partnership estate, used its assets in the continuation of the business until he made the assign-

ment to the defendant, who then took charge of, and sold and disposed of them.

Defendant claims that there was evidence tending to show that a portion of the property that went into the assignee's hands was purchased by Williams with his individual funds, but even if this was so, the law is well settled that when a person who holds property in a fiduciary capacity mixes his own property with it so that it can not be separated nor the amount of each ascertained the whole becomes both at law and in equity the property of the trust estate.   [National Bank v. Insurance Co., 104 U. S. 54.]    In 2 Perry on Trusts (4 Ed.), section 838, it is said:   "Upon the same principle, if the executor of a deceased partner is also the surviving partner, and he continues the deceased partner's capital without authority in the business, and changes the property many times over, the court follows the trust fund through all these changes, and gives the beneficiaries of the deceased's partner's estate the capital and all its proceeds or gains in the business in which it has been employed."

So in Harrison v. Smith, 83 Mo. 210, this court approvingly quoted from 1 Story's Equity, section 468, the following:

"An agent is bound to keep the property of the principal separate from his own; if he mixes it up with his own the whole will be taken, both at law and in equity, to be the property of the principal, until the agent puts the subject-matter under such circumstances that it may be distinguished as satisfactorily as it might have been before the unauthorized mixture on his part. In other words, the agent is put to the necessity of showing clearly what part of the property belongs to him; and so far as he is unable to do this, it is treated as the property of his principal.   Courts of equity do not in these cases proceed upon the notion that strict justice is done between the parties, but upon the ground that it is the only justice that can be done; and that it would be inequitable to suffer the fraud or negligence of the agent to prejudice the rights of the principal."

Many other authorities could be cited in support of the rule thus announced, but it is not thought that it would serve any useful purpose to do so.

Our conclusion is that the judgment should be affirmed, and it is so ordered.

All of this Division concur.