BANK OF SENECA and LAWRENCE COUNTY BANK, Respondents, v. ANNA M. MORRISON, Individually, ANNA M. MORRISON, as Administratrix of the Estate of DAVID B. MORRISON, Deceased, N. P. ROOD, SENECA TRIPOLI COMPANY, Appellants.

Springfield Court of Appeals, June 25, 1918.

1. **EXECUTORS AND ADMINISTRATORS: Creditors: Equitable Action.** Where a $4000 interest in real estate owned by intestate at the time of death was diverted from the estate by administratrix and heirs, equity will entertain action by creditors to compel heirs and administratrix individually to pay such amount to administratrix in her official capacity; creditors having no adequate remedy in probate court.

2. **COURTS: Opinions: Precedents: Issues Involved.** Where an issue is not specifically called to court's attention, the court's opinion is no authority thereon.

3. **EXECUTORS AND ADMINISTRATORS: Sale of Land: Notice to Creditors.** Revised Statutes 1909, section 152, requiring notice to "all persons interested in the estate" of a decedent when, the personal estate being insufficient to pay debts and legacies, the probate court is petitioned for an order directing sale of land, requires notice to creditors as well as heirs.

4. ————: **Order of Relinquishment: Notice to Creditors.** Probate court's order of relinquishment of the interest of intestate in a

land contract was void, where no notice of application therefor was given creditors of the estate.

5. ———: **Relinquishment: Land in Other States.** An order of relinquishment of the interest of intestate in land situated in another State is void, the administratrix having no power to inventory or administer such land in a State in which it was not situated.

6. ———: **Foreign Administration.** Where intestate has interest in land situated in a State other than that in which his administratrix is appointed, the only means whereby such land can be disposed of in administration is by an ancillary administration in that State according to the law thereof.

7. ———: **Action: Land in Other States: Creditors.** Where intestate had interest in land in State other than that in which administratrix was appointed, administratrix having no power as administratrix over such land cannot be sued by creditors of the estate for value of such interest diverted from the estate.

8. ———: ———: **Evidence: Sufficiency.** In an action against administratrix and heirs for diverting from an estate decedent's interest in land under a contract, evidence *held* insufficient to show that decedent's interest was of any value.

Appeal from Newton County Circuit Court.—*Hon. Charles L. Henson,* Judge.

REVERSED.

*A. W. Thurman* for appellants.

*George Hubbert* and *O. L. Cravens* for respondents.

BRADLEY, J.—Action in equity to recover of and from the defendants $4,000 alleged to have been diverted from the estate of David B. Morrison, deceased. Judgment below went in favor of plaintiffs and against defendants with special direction that defendants pay to the defendant, Anna M. Morrison as administratrix of her husband's estate the sum of said judgment with interest. After unsuccessful motions for a new trial and in arrest, defendants appealed.

David B. Morrison died intestate January 26, 1916, in Newton county, Missouri. Defendant Anna M.

Morrison is the widow, and administratrix of the estate; defendant, Rood, is the son-in-law of Mr. and Mrs. Morrison; defendant, Seneca Tripoli Company, is a corporation.

August 17, 1915, David B. Morrison entered into a contract with one H. T. Hornsby whereby Morrison agreed to purchase one hundred twenty acres of land in Ottaway county, Oklahoma, upon which was a tripoli mine and a mill or mining plant. The written agreement to purchase provided that "in consideration of the keeping of this agreement and the further payments hereinafter stated the party of the first part (Hornsby) does hereby give and grant unto the party of the second part (Morrison) the exclusive right and option to purchase all of the right, title, and interest" in said premises. Previous to the reduction of contract to writing Morrison had paid $1000, and on the date of the execution thereof paid $500, and agreed to pay $1000 on September 10th, and $1500, October 1, 1915. After providing for the payments mentioned the contract further provided that if Morrison made the payments above mentioned then Hornsby agreed to make a deed for the additional consideration of $8000, one-half payable in six months from October 1, 1915, and one-half in twelve months. The $8000 was to be secured by mortgage on the property. The contract further provided that "if the party of the second part fails to keep any of the terms and conditions of this contract then the party of the first shall be entitled to the possession of said premises and shall have the right to reenter and take possession thereof, and at the time of the taking possession of said property, the party of the first part shall be entitled to retain and keep all payments made at the time as liquidated damages or rental for the use of said property."

Morrison made the payments due September 10th and October 1, 1915, making a total of $4000 paid. The record is not clear just when the payments due September 10th and October 1st were paid, but Morrison had no deed to the property when he died. February 5,

1916, defendant, Anna M. Morrison, was appointed administratrix. The estate was hopelessly insolvent, and there were, therefore, no funds with which to pay the balance due on the contract. In this situation a family conference was held, the result of which was that defendant, Rood, entered into a declaration of trust with the widow and heirs to the effect that he would pay the balance on the contract, and put the mine on a going basis; and if the venture was successful, he would reimburse himself for the $8000 and whatever amount he put into the project, and thereafter the profits would go to the creditors until they were all paid, and then the property would be turned over to the widow and heirs, one-third to the widow and the balance equally to the heirs.

The plan agreed upon at the family conference was communicated to Hornsby, and he declined to make a deed to Rood unless the probate court would order the release and relinquishment of Morrison's agreement to purchase as provided for in section 144, Revised Statutes 1909. The administratrix on March 3, 1916, filed in the probate court of Newton county a petition, setting up the terms and conditions of the Morrison-Hornsby contract and the burdens imposed by it, stating that there were no funds in the estate to carry out the terms of said contract, and prayed for an order of relinquishment. The probate court took up the matter, and, after hearing the evidence, ordered that the contract be relinquished. Thereafter the widow and heirs quit-claimed to Hornsby, which quit-claim was intended as a relinquishment under the order of the probate court, and is so styled by both sides. The statute, however, provides that the executor or administrator shall execute the relinquishment.

March 25th after said relinquishment Rood paid the $8000 balance, and Hornsby executed a deed conveying the property to Rood. Rood organized the defendant corporation, Seneca Tripoli Company, and conveyed to it by bill of sale the mining equipment situate on the premises, and by separate instrument

conveyed the land. On the same day that Rood conveyed to the Seneca Tripoli Company, he executed the declaration of trust above referred to. This declaration recited the order of relinquishment, and that Hornsby had conveyed said property to Rood, and that Rood had paid the $8000, and had organized the Seneca Tripoli Company; and that he held all the stock of said corporation except six shares; and also the provision as to final disposition as above stated.

Thereafter, but at the same term of the probate court at which the original order of relinquishment was made, plaintiff, Bank of Seneca, filed in the probate court a petition praying that the order of relinquishment be set aside upon certain alleged grounds, the substance of which are that such relinquishment was detrimental to the interests of the estate, and was based upon insufficient evidence, and that improper influence was exercised upon the administratrix to induce her to make application for an order of relinquishment, and that there was no notice thereof to the creditors, and no report to the court of the relinquishment, and no approved or confirmation of the relinquishment, and that for these reasons the order was void.

A hearing was had on the application to set aside the order of relinquishment, and the court made an order somewhat ambiguous in that it is difficult to determine whether the probate court set the order aside or merely set the matter down for final hearing. But the view we take of the validity of the order of relinquishment, it is not necessary to determine this latter question.

No further proceedings or hearing, however, were had in the probate court, and no further steps were taken until January 18, 1917, when the cause now here was commenced in the circuit court. In the meantime Rood continued to operate the tripoli mine, and up to the time of the trial of this case below had invested therein $27,000 in addition to the $8000 paid in the

beginning. At the time of the trial the plant was not on a paying basis, but bid fair to be successful.

Under the above conditions plaintiffs seek on behalf of themselves and other creditors to compel defendants to pay the estate $4000, the amount that was paid on the property by Morrison in his lifetime.

Defendants filed separate demurrers, and pleas to the jurisdiction of the circuit court, but these were overruled. Defendant, Mrs. Morrison answered separately renewing her plea to the jurisdiction and pleaded the insolvency of the estate, and the impossibility to redeem the property; and that the property because of its condition had no sale value above the $8000 against it, and was not an asset to the estate. Defendant, Rood, answered renewing his plea to the jurisdiction and denying any desire on his part to personally profit by the transaction in taking over the property, and that at the time he took over the property that it was a non-going concern and was worth not over $8000, and that he had put into the business about $30,000 in addition to the $8000 initial payment; and that prior to the bringing of this suit plaintiffs had been advised of and given copies of all contracts and agreements executed in connection with said property. Defendant, Seneca Tripoli Company, answered by general denial and a plea to the jurisdiction. It might be stated here that it was disclosed at the trial of this cause that plaintiff, Lawrence County Bank, has been paid in full by Mrs. Morrison individually as she was on the paper to that bank. So in fact that plaintiff has no interest here.

There are two propositions for determination as we view this record: (1) Has the circuit court original jurisdiction to hear a cause of this character? (2) Do the facts support the judgment rendered?

Defendants throughout contended that the circuit court has no original jurisdiction to determine a cause of this character. The sole purpose of plaintiffs' suit is to require an accounting for the value of Morrison's interest in the Hornsby contract. Plaintiffs challenge

the validity of the order of relinquishment of the probate court in substance on three grounds: (1) That no notice was given to the creditors of the intention to make application for such order; (2) that there was no report made by the administratrix to the probate court of the relinquishment and the terms and conditions thereof; (3) that the probate court did not approve and confirm the so called relinquishment. Plaintiffs, of necessity, must overcome the obstacle of the relinquishment if it be treated as such before there could be any cause of action in any court; for if the relinquishment is valid, then there can be no legal complaint as to the management of the estate by the administratrix in regard to the interest of deceased in the mining property. It is conceded that the last named defendants have in their possession, or are the beneficiaries of whatever, if anything, the Hornsby contract was worth to the estate.

A suit may sometimes be maintained in a court of equity which would ordinarily appear to be a matter for the probate court, but such is the case only in those rare instances where the provisions of the administration law fail to provide for a complete and adequate remedy, and when relief may be found only in a court of purely equitable cognizance. [Brewing Company v. Steckman, 180 Mo. App. 320, 168 S. W. 326; Nebel v. Bockhorst, 186 Mo. App. 499, 172 S. W. 452.]

In Matson & May v. Pearson, 121 Mo. App. l. c. 130, 97 S. W. 983, it is said: "It has been pointedly decided, however, by our Supreme Court that the reason on which equity interposed in matters of administration in the old days does not obtain with us and that the principle suggested has no application in view of our statutes with respect to administration. It is pointed out that they are so full and complete, abounding with apt and pertinent provisions to administer full, complete and adequate relief at law, and that their provisions are so ample with respect to matters of administration that they amount to an exclusion in

fact, of the chancery jurisdiction asserted unless there be some fact or facts involved which renders the case one where adequate relief at law cannot be had.''

Jurisdiction, however, was held to be proper in a court of equity in the last-mentioned case because of the inadequacy of the remedy in the probate court. Reasoning as though the property in dispute was situate in this State, we think that the case at bar falls within the exception. Whatever interest David B. Morrison had in the Hornsby option was an interest in real estate. He had paid $4000, and was put in possession by the grantor, and was in possession at the time of his death; and no attempt had been made to forfeit the payments made on any alleged breach of the contract to purchase. So far as appears from the record Morrison made the payments exactly as he agreed. He died just before the first $4000 payment fell due. The many devious and intricate angles in the case at bar we think brings it within that class of cases of which it was said in Brewing Company v. Steckman, 180 Mo. App. l. c. 326, 168 S. W. 226, that ''if the claim made is of purely equitable cognizance, the summary statutory remedy in the probate court would not be available, since that court could not try such questions; for frequently they involve the most difficult, intricate and abstruse questions and require all the powers and machinery of a court of equity to adjust and settle upon an equitable basis.'' It is pointed out in Brewing Company v. Steckman, supra, that there are a number of cases in this State wherein equitable relief was granted, and where the jurisdiction of the circuit court passed unchallenged, and Leeper v. Taylor, 111 Mo. 312, 19 S. W. 1096; Tufts v. Latshaw, 172 Mo. 359, 72 S. W. 679; Wernse v. McPike, 100 Mo. 476, 135 S. W. 809 are cited as such examples.

We think that State ex rel. v. Holtcamp, 245 Mo. 655, is in point and decisive on the question of the validity of the order of relinquishment. Independent of that opinion it would appear that no notice to the creditors was required to give the probate court juris-

diction to make the order of relinquishment, as that was the holding in Garrett v. Bicknell, 64 Mo. 404, and inferentially Valle v. Flemming, 19 Mo. 454, is to the same effect; and it is upon those two cases that defendants principally rely to uphold the validity of the order to relinquish. But the question in State ex rel. v. Holtcamp, supra, was so similar to the question here touching the validity of the order of relinquishment that there is no escape from the effect of that decision. From the Holtcamp case at page 669 we quote: "We are aware that a somewhat similar sale was upheld by this court in Garrett v. Bicknell, 64 Mo. 404; but the objection to the administrator's deed in that case was mainly on the ground that no petition was presented to the probate court asking that the sale be made, and the deed in that case was not assailed on the ground that there was no notice to the heirs. Courts usually do not pass upon issues which are not specifically called to their attention. [Howard v. Brown, 197 Mo. 36, 1. c. 45.] The lack of notice to the heirs was not called to the court's attention in the Garrett case, supra, and therefore the opinion in that case is not authority upon the issue now under consideration . . . It is true, as contended by respondents, that sections 147 and 148, Revised Statutes 1909, do not require any notice to heirs or creditors of a proceeding to sell incumbered lands; but in the well considered case of State ex rel. v. Walbridge, 119 Mo. 383, 1. c. 394, we said: 'The law in accordance with the principles of justice—principles which are fundamental and eternal—will require that notice be given before any person be passed upon, either in person, estate or any other matter or thing to which he is entitled. And though the statutes do not in terms require notice, the law will imply that notice was intended.' [See, also, State ex rel. v. Maroney, 191 Mo. 531.]"

It is true that the Holtcamp case involved a question of notice to the *heirs,* while the complaint here

200 M. A.—12

is that there was no notice to the *creditors,* but where notice under the statute is required it is to be given to *all persons interested in the estate.* [See Sec. 152, R. S. 1909.]

We call attention to the amendment of section 146, Revised Statutes 1909, in Laws 1917, p. 96. The amendment, however, was not in existence when the order of relinquishment was made in the case at bar and we merely call attention to it in passing.

We have reached the conclusion that the order of relinquishment is void for failure to give notice to the creditors; but said order is void for the reason that the land respecting which the order was made is not in this State. The power of the administratrix as such did not extend beyond the boundaries of this State. As administratrix here she had no power or authority over property in Oklahoma belonging to her intestate. In Emmons v. Gordon, 140 Mo. l. c. 498, 41 S. W. 998, it is said: ''An administrator's power as such does not extend beyond the boundaries of the State in which his letters of administration are granted, nor can he sue in the courts of any State, or take possession of property belonging to his intestate without becoming a trespasser, unless he first qualifies as administrator according to the laws of the state where suit is intended to be brought, or the property is situated. In other words, letters of administration have no extra-territorial force. [Naylor's Adm'r. v. Moffatt, 29 Mo. 126; Scudder v. Ames, 89 Mo. 522; In re Partnership Estate of Ames & Co., 52 Mo. 290; State ex rel. v. Osborn, 71 Mo. 86; McPike v. McPike, 111 Mo. 216, 20 S. W. 12.]''

This question is discussed somewhat at length in the Emmons case, and a number of authorities are cited and quoted, holding that an administrator has no control whatever over property beyond the State where the letters of administration are issued, and we make reference to the Emmons case for a more complete discussion of that question. [See, also, Bank v. Dowdy, 175 Mo. App. 478, 161 S. W. 859.]

If the administratrix, Mrs. Morrison, had no control over the Oklahoma property then it follows that she should not have inventoried it, and that any order made by the probate court of Newton county, Mo., affecting the Oklahoma property was void. Also it is clear from the Emmons case and other cases there cited that plaintiffs cannot maintain this cause of action. In the Emmons case the administrator *de bonis non* was seeking to recover of the executor named in the will the proceeds of some Texas land sold by the executor. It was held that such suit could not be maintained. If the administrator *de bonis non* could not maintain such suit, then creditors certainly cannot. The only way whereby Morrison's interest in the Oklahoma property could have been disposed of in administration would have been under an ancillary administration in that State, and according to the laws of that State. The quit-claim deed of Mrs. Morrison and the heirs conveyed whatever interest they had individually, which conveyance they had had a right to make independent of an order of the court. While the instrument is called a relinquishment, it is not such as the statute contemplates, but on the other hand it is just the ordinary quit-claim deed with some additional recitals, which in no wise change its character.

All of the evidence shows conclusively that the $8000 that Morrison owed on the land at the time of his death was as much, if not more, than the whole property was worth. It is true that Morrison agreed to give $12,000 for it in August, 1915, but that is far from establishing its value in March, 1916, when Rood took over the property, or even in August, 1915, when Morrison agreed to give $12,000 for it. Morrison was in the tripoli mining business, and already owned or was interested in some tripoli mines not far distant from this property, and Morrison's success with this particular property after he obtained possession was not such as to enhance its value. The property had been in a court of bankruptcy, and was sold at public sale for $7000 a short time before Morrison got hold of

it. The cashier of plaintiff, Bank of Seneca, testified that he had offered Rood his money back, $8000, shortly after Rood took over the property, but there is no evidence that he offered any more. Also a short time before Morrison agreed to buy the property it had been contracted for sale at $9000, and the would-be purchaser had paid $1000. The sale was not completed, and the $1000 was forfeited. Morrison added nothing of consequence to the property. Its value to him was such as the average mining project is—some substance and some shadow. If the property were located in this State we could not let the judgment stand, because of the failure of substantial evidence as to value to support such judgment.

The judgment is reversed. *Sturgis, P. J.,* and *Farrington, J.,* concur.